UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUDITH COLE, a single person; LOUISE MICHAEL, a single person; DAVID JOHNSON, a single person,<br><br>                                    Plaintiffs,<br><br>    v.<br><br>KEYSTONE RV COMPANY, LLC, a foreign business entity,<br><br>                                    Defendant. | NO.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT, THE AUTO DEALERS ACT, AND THE UNIFORM COMMERCIAL CODE**<br><br>**(JURY TRIAL REQUESTED)** |

## I.    CLASS ACTION ALLEGATIONS

1.1    This is a class action brought on behalf of more than one-hundred (100) consumers who purchased new, recreational vehicles in the state of Washington in the last four years, which were manufactured by the Keystone RV Company. Keystone is headquartered in Indiana and manufactures RVs under a dozen or more different names, including Montana, Cougar, Outback, Springdale, Raptor, Residence, Retreat, Passport,

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

Hideout, Sprinter, Laredo, Fuzion, Bullet, Premier, Alpine, Avalanche, and others.  All such Keystone recreational vehicles are referred to herein as "Keystone RVs."

1.2     The Plaintiffs in this action consists of all persons who have purchased a Keystone RV in the last four years.  At all times relevant hereto, Keystone RV knew that the "prolonged" occupancy of their RVs pose serious health hazards to humans. Keystone RV also knew that these hazards derive from the high-moisture content inside of Keystone RVs; the lack of effective air circulation in Keystone RVs; the development of toxic mold and mildew inside Keystone RVs; formaldehyde and other chemicals in the materials used in the construction of Keystone RVs; and other similar hazards known to cause and/or aggravate serious respiratory problems, in Keystone RVs. Keystone RV also knew that the health hazards of "prolonged occupancy" of Keystone RVs are substantially greater for consumers in the Pacific Northwest, than warmer and drier climates. Keystone has a duty to conspicuously and effectively disclose the risk of serious health hazards that result from the ordinary use of its products.

1.3     For at least the last four years, Keystone RV has deliberately chosen to withhold all of the information in the preceding paragraph, from its consumers prior to the point of sale of a Keystone RV. In fact, Keystone RV markets and sells its RVs by misleading consumers to believe that its RVs can indeed be occupied for "prolonged" periods. Keystone RV also knows that many consumers live full-time in their RVs.  Even when Keystone RV learns that consumers are actually suffering from severe respiratory conditions while occupying a Keystone RV, the company and its employees *still* withhold the company's knowledge of the severe dangers of continued occupancy in its RVs.

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

1.4    After the point of sale, Keystone RV continues to fail to provide any conspicuous, or effective, or meaningful disclosure of the health hazards of "prolonged" occupancy of its RVs. The only information provided by Keystone RV to consumers about the dangers of "prolonged" occupancy of its RVs, appear in an obscure "caution" contained in its lengthy owner's manual, which is typically provided to consumers with a large number of other documents when the RV is purchased. No meaningful effort is ever made by Keystone RV, or its agents, dealers or representatives, to warn consumers of the serious health hazards that can and do result from their "prolonged" occupancy of Keystone RVs. This is true even when Keystone RV, and its agents, dealers, or representatives, have *actual* knowledge that a consumer with serious respiratory illnesses is occupying a Keystone RV for "prolonged" periods.

1.5    The Plaintiffs in this class action are divided into two groups. Group 1 Plaintiffs have occupied their Keystone RVs for "prolonged" periods of time and typically have experienced respiratory conditions which were caused or aggravated by their "prolonged" occupancy of their RV. Many of these plaintiffs were forced to move out of their RV, or sell their RV, because of such respiratory problems. Some Group 1 Plaintiffs continue to occupy their Keystone RV because they have no alternative. Group 1 Plaintiffs seek a repurchase of their RVs by Keystone RV, and the recovery of all damages they have sustained by virtue of the wrongful conduct of Keystone RV. Group 2 Plaintiffs consist of all others who have purchased or owned a Keystone RV in the last four (4) years, other than Group 1 Plaintiffs. Group 2 Plaintiffs do not occupy their RVs for "prolonged" periods and they do not suffer from respiratory conditions that could be aggravated by the "prolonged" occupancy of their

**COMPLAINT – CLASS ACTION - 3**

RV.  However, the inability of Group 2 Plaintiffs to occupy their Keystone RV for a "prolonged" period is a substantial limitation on the use of Keystone RVs and diminishes the value of the RV.  Group 2 Plaintiffs seek damages for such diminished value of their RVs.

1.6    Judith Cole, Louise Michael and David Johnson, are all single adults and all residents of the State of Washington.  Each of them is a Group 1 Plaintiff.  Each purchased a new Keystone RV in the last four years.  Each has a respiratory condition which was caused or aggravated by their "prolonged" occupancy of a Keystone RV.  The Plaintiffs Cole, Michael and Johnson herein are entitled to recover all such damages, as described in the balance of this complaint, which were proximately caused by Keystone's wrongful conduct.

1.7    Group 2 Plaintiffs are entitled to recover the diminished value of their RV, proximately caused by the undisclosed defects in their RVs, which reduce the fair-market value of their RVs.  For purposes of this complaint, "diminished value" is the difference between an RV without defects, and the defective RV they actually purchased.

1.8    Group 1 Plaintiffs Cole, Michael and Johnson are each adequate representatives of both groups of Plaintiffs.

1.9    The Plaintiffs allege three separate and alternative causes of action in this Complaint: 1) violations of Washington's Auto Dealers Act (RCW 46.70, *et seq.*); 2) violations of Washington's Consumer Protection Act, (RCW 19.86, *et seq.*); and 3) violations of the Uniform Commercial Code, as adopted by Washington's Legislature (RCW 62A, *et seq.*).   The Plaintiffs reserve the right to amend their Complaint as discovery warrants.

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

## II.   KEYSTONE RV'S WRONGFUL CONDUCT

2.1    RVs are mobile, compact living enclosures mounted on a frame with wheels, towed behind motor vehicles. Keystone RVs vary from approximately 12 to 43 feet. All Keystone RVs have at least sleeping and cooking areas.  Larger Keystone RVs include kitchens, major kitchen appliances, full-sized furniture, washers, dryers, showers, one or more plumbed toilets, sinks, flat-panel televisions, patio doors, cable hook-ups, skylights – many of the same amenities found in homes and apartments. The retail cost for a Keystone RVs varies from approximately $8,000 to more than $100,000.  Keystone RV sales have increased every year since 2009, sometimes in double-digits.

2.2    For purposes of this complaint, Keystone RVs do not include motorized RVs, tent campers, "pop-up" campers, expandable campers which incorporate tent rooms, or campers which fit entirely into the boxes of pickup trucks.

2.3    The design and construction of RVs is substantially less regulated than land-based manufactured homes. This is particularly evident with Keystone RVs, whose owners generate large numbers of complaints and warranty claims.  Consumers have filed over 100 complaints against Keystone in the last four years with the Consumer Protection Division of the Office of the Attorney General, describing problems which impair or prevent the occupancy or use of their RVs.  Keystone attempts to limit its liability for such complaints by sharply limiting its warranties to only one or two-year periods, depending on the RV.

2.4    Keystone sells and services its RVs by agreement with more than 1,000 authorized dealers in the U.S., which act as Keystone's agent in the sales and servicing of its

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

RVs.  All or most of the same dealers also act as Keystone's agent in responding to warranty claims by consumers.  However, Keystone frequently fails to provide adequate information, guidance, control or supervision to its authorized dealers and service providers.  This only exacerbates the harm to consumers, especially when Keystone RV knows that its own customers are suffering severe respiratory problems while occupying their RVs.

2.5     Keystone has long known of the health hazards of humans occupying the confined space of its RVs.  This is evidenced in part by the Katrina RV litigation known as In re Fema Trailer Formaldehyde Prods. Liab. Litig., filed in U.S. District Court in Louisiana in 2011. In that litigation, the plaintiffs alleged that Keystone and other RV manufacturers failed to disclose the dangers of living in unventilated RVs, which are constructed partly from materials containing formaldehyde.

2.6     Keystone also knows that the ordinary use of its unventilated RVs by consumers almost always result in excessive moisture levels inside the RV.  This results in the development of mold and mildew, which represents a serious threat to all persons who occupy a Keystone RV, of various respiratory disorders.  Keystone deceptively and unfairly fails to disclose any of this information to its own customers – even when Keystone learns that customers are experiencing moisture intrusion, mold, or mildew in their RVs.

2.7     The risks of developing respiratory illnesses from living in such environments, or aggravating existing respiratory illnesses, are substantially increased by the presence of moisture in the confined space. This can occur from leaks in the RV, or condensation, or cooking, or the simple act of breathing.  Each of the named Plaintiffs reported the presence of

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

moisture or mold in their RVs, or respiratory problems they suffered, after buying their RVs. Neither Keystone, nor its authorized service providers and agents, took any meaningful steps to inform consumers of these health hazards. The Plaintiffs were forced to vacate their RVs after symptoms of respiratory conditions developed or worsened to the extent that it impaired their breathing. A third Plaintiff, Johnson, continues to occupy his Keystone RV, despite two bouts of pneumonia since he has occupied his RV.

### III.    PARTIES

#### A.  Judy Cole

3.1    Judy Cole is a retired widow living in Thurston County. In September of 2016, Judy and her husband Ron visited Tacoma RV, an authorized Keystone RV dealer, to look at new RVs. Ron and Judy planned to travel around the country and visit friends and relatives for approximately two years, during which they would live in their new RV. The Coles spent approximately six hours at Tacoma RV, looking at RVs and talking with several salespersons. During this time, the Coles repeatedly told Tacoma RV employees of their plans for the RV in detail.

3.2    The Coles finally decided to purchase a 2017 Keystone Passport with VIN #4YDT22022HX412862 with a price of $20,500. After options and financing, the total cost of the RV was $60,807.60.

3.3    Before the purchase, the Coles were not provided with any warnings of health hazards that might be associated and their use of the RV. The Coles also purchased a new pickup truck to pull the RV, for $48,768.

COMPLAINT – CLASS ACTION - 7

3.4    Judy and Ron both had extensive histories of respiratory problems when they visited Tacoma RV. Ron is a disabled veteran and was long ago diagnosed with Chronic Obstructive Pulmonary Disease (COPD). For the last five years, Ron required the use of supplemental oxygen 24 hours a day.  A salesperson at Tacoma RV took a picture of the Coles after they bought the RV. Ron is wearing his oxygen mask in the photo below.



Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

3.5     Above is a close-up of the same photo, showing Ron Cole wearing his supplemental oxygen apparatus.

3.6     Less than 90 days after purchasing the RV, the Coles both began experiencing new or worse symptoms of their respiratory problems.  At about the same time, the Coles discovered black mold growing in their RV.  Tests later confirmed that the mold was Cladosporium and Aspergilus/Penicillium, both of which are potentially harmful to humans, and especially those with a history of respiratory illnesses, like the Coles.

3.7     The Coles reported these problems to the dealer, Tacoma RV, and Keystone RV, but received very limited assistance.  For example, Keystone sent the Coles a "customer satisfaction survey" and Judy provided a lengthy response reporting their problems with the Keystone RV. Judy reported several problems with the RV, including the mold and their

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

respiratory illnesses.  Keystone RV generally denied any responsibility and claimed that "surface mold" was not harmful to humans.  Keystone RV did not disclose any other information regarding the dangers of "prolonged" occupancy of the RV.

3.8    When the Coles told Keystone that they could not live in their RV, Keystone representatives told the Coles to contact their insurance company to "write off" the RV. There is no coverage in the Coles' RV insurance policy for damages caused by design or manufacturing defects, or deceptive conduct by the manufacturer.  The Coles were then forced to rent a small apartment which they could not afford, while still making payments on the Keystone RV.

3.9    In October of 2017, Ron's condition worsened, and he died on November 26, 2017.  According to the Death Certificate, Ron's cause of death was "severe chronic obstructive pulmonary disease."  Judy Cole believes that Ron's COPD was aggravated and made worse by his exposure to mold in the Keystone RV.

3.10    Judy Cole seeks all damages they have sustained as a result of Keystone's wrongful conduct, including the costs or purchasing and owning the RV, the truck, and the loss of use of the RV.

**B. Louise Michael**

3.11    Louise Michael is a single woman who resides in Pierce County. She is retired, lives on a fixed income, and has a history of allergies.  On August 8, 2015, Louise purchased a new 2016 Keystone Outback from Tacoma RV, an authorized Keystone RV dealer and warranty service center. Before buying the RV, Louise explained to the dealership that she

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

intended to occupy the RV full-time as her primary residence. Ms. Michael was not provided with any warnings or cautions about health hazards associated with her use if the RV.

3.12    The total purchase price for the 32-foot-long RV was approximately $90,000.    Louise financed the RV with a fifteen (15) year loan. Tacoma RV delivered Ms. Michael's new, Keystone RV to a mobile home park in Long Beach, Washington, where Louise rented a space.  Over the next several months, however, Louise discovered numerous defects in the RV.  Less than five months after buying RV, she traded it in for a new 2016 Keystone Cougar at Tacoma RV (on January 18, 2016). The total purchase price for this 33-foot-long RV was $99,214.

3.13    On January 12, 2017, Louise took the RV to Tacoma RV complaining of defects with the RV including leaks and cracks resulting in the intrusion of moisture. These defects were reported to Tacoma RV, which required over 4 months to repair because of the unavailability of parts from Keystone.  Still, not all of the problems were corrected.

3.14    In the winter and spring of 2017, Louise began experiencing various respiratory symptoms.  On May 4, 2017, Louise woke up in the middle of the night barely able to breathe. Her allergies were aggravated by the moisture and/or mold in the unventilated air space of the RV.  Louise decided to contact an inspector and have the RV tested for mold.

3.15    On May 19, 2017 an inspection of the RV was performed by a certified mold inspector.  His report revealed that the moisture level in the bedroom carpet on the left side of the bed was at a high level of 90%.  The storage area in the same area measured moisture

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

levels of 82%. The inspector stated that these numbers indicate that there is moisture under the flooring of the trailer.

3.16    Mold samples were taken in the RV on two separate occasions and sent to SanAir labs for analysis. These first samples revealed low levels of mold in the breathable air of the RV. The second samples revealed Chaetomium, which only grows in environments with higher moisture content, and is a precursor to Stachybotris.

3.17    Louise attempted to resolve all of these problems under the warranty for the RV, which the dealership and Keystone RV, all of which proved unsuccessful. Louise vacated the RV, and surrendered it to her lender.

3.18    On October 17, 2017, Louise's attorney notified Keystone RV, its registered agent, Keystone's authorized dealer, and Louise's lender, that she was rejecting her acceptance of the RV pursuant to RCW 62A.2-608.

**C. David Johnson**

3.19    David Johnson is a retired veteran living in Pierce County who purchased a Keystone Bullet on March 9, 2014 from Fife RV. Like Judy Cole and Louise Michael, David Johnson told Keystone's authorized dealer, Fife RV, that he intended to live full-time in his new RV. Neither Keystone nor its authorized dealer disclosed any potential health hazards to David that might occur during David's use of the RV. After buying the new RV, employees of Fife RV delivered the RV and set it up on a space in a mobile home park, in Puyallup, Washington.

3.20    On July 23, 2014, while David was residing in this new RV, a leak developed during a summer rain, and large amounts of moisture flowed into the RV. He called Keystone's

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

authorized dealer and informed them of the problem.  David was told by the service manager that the earliest that Fife RV could attempt repairs would be August 8.

3.21    The service manager also told David that he must tarp the RV himself, or risk the loss of his warranty.  Acting upon these directives, David purchased a tarp and attempted to place it on the roof of the unit to prevent further leakage.  This was made difficult by the David's disabilities, his lack of experience in such work, and his lack of appropriate lift devices and safety equipment to protect against a fall.  While he was in the process of covering the RV with a tarp, a wind gust suddenly caught the tarp and blew David off of the roof of his RV, causing him to fall to the ground.

3.22    David was knocked unconscious and was found lying on the ground by his neighbor. The fire department was called, which sent an emergency unit to the scene to revive him.  David spent several days in the hospital and then returned to his RV.

3.23    During the following weeks, David contracted pneumonia while in the RV.  Certain repairs were eventually completed which reduced the amount of moisture in the RV.  However, the air inside the RV remains unventilated and moist and pose a threat to his health. He must find different living quarters.

**D.  Keystone RV Company**

3.24    Keystone RV controls the manufacture and marketing of all RVs involved in this class action.  Keystone RV manufactures a wide variety of non-motorized, towable vehicles known variously as travel trailers, park model recreational vehicles, etc.  All of these vehicles are referred to in this complaint as recreational vehicles ("RVs").

COMPLAINT – CLASS ACTION - 13

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

3.25    Keystone RV markets and sells its RVs in Washington through a large group of authorized dealerships.  Hundreds of Keystone RVs are sold in Washington each year. Keystone RV advertises itself as "the #1 selling Travel Trailer & Fifth Wheel brand in North America."

3.26    Keystone RV's were neither designed nor manufactured for "prolonged occupancy" by humans----a fact never disclosed to consumers before buying a Keystone RV. The absence of circulating air, and resulting humidity inside the RV, poses a serious health hazard to all consumers who reside in their RV for "prolonged" periods.

3.27    Restrictions on the use of each RV, which were known to the defendants but not disclosed to the Plaintiffs before they purchased their RVs, limit the Plaintiff's use of the RV. Such restrictions preclude the Plaintiff's use of the RV entirely. In other cases, such restrictions may have no effect on a Plaintiff's use of the RV, but result in a diminished value of the RV.

## IV.    JURISDICTION AND VENUE

4.1    Jurisdiction and venue in this Court are based upon § 1332 of Title 28 of the United States Judicial Code, 28 U.S.C. §§ 1332, as amended by The Class Action Fairness Act of 2005 ("CAFA"), Pub. Law 109-2 (Feb.18,2005). The Class involves more than 100 persons. 28 U.S.C. § 1332(d)(5)(A).

4.2    The aggregate amount in controversy, exclusive of interest and costs, exceeds $5,000,000.  28 U.S.C. § 1332(d)(2). The overwhelming majority of Plaintiffs are residents of Washington while others are believed to reside in Oregon, Idaho, California, and possibly other

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

states. Therefore, minimal diversity of opposing parties is present as required under CAFA. 28 U.S.C.§ 1332(d)(2)(A).

4.3    In connection with the acts and course of conduct alleged in this Complaint, the Defendants both directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mails and interstate telephone communications, to engage in the conduct at issue herein.

4.4    Venue is proper in this District under §§ 1391(a) and 1391(c) of Title 28 of the United States Code, because a substantial part of the acts and conduct charged herein occurred in this District. The Defendants' conduct manifested itself in this District and the receipt of materially deceptive, unfair, false and misleading representations were received in this District. Numerous Class members purchased these defective travel trailers from Defendants in this venue and/or were injured and subjected to irreparable harm in this venue. Defendants received substantial compensation and profits from sales of such products in this venue. Thus, Defendants' liability arose in substantial part in this District. Plaintiffs and numerous Class members used their travel trailers substantially in this District. Defendants are also registered to do business and conduct substantial business in this District.

## V.    FACTS SUPPORTING CAUSES OF ACTION

### A. Keystone's "Caution" to Consumers Is Ineffective

5.1    Keystone RV provides an Owner's Manual with each new RV which contains a graduated protocol of providing "safety messages" to consumers:

> DANGER indicates an imminently hazardous situation that, if not avoided, will result in death of serious injury.

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

WARNING indicates a potentially hazardous situation that, if not avoided, could result in death or serious injury.

CAUTION indicates a potentially hazardous situation that, if not avoided, may result in minor or moderate injury.

NOTICE is used to address practices not related to personal injury. This applies to hazardous situations involving property damage only.

5.2    Keystone also knows that the hazards of unventilated air are made substantially worse by known air pollutants typically found inside their RVs, such as formaldehyde, pollen, dander, secondhand smoke, carbon monoxide, various household cleaners, and other pollutants. Keystone also knows that its RVs frequently leak, permitting varying amounts of water intrusion by in their RVs.  This only exacerbates the hazards to the occupants of their RVs by encouraging the development of mold and mildew.  This is particularly so in the Pacific Northwest, where moisture and precipitation is more common than most other regions of the U.S.

5.3    Keystone RV provides the following "caution" in its owner's manuals:

## Chapter 3: Effects of Prolonged Occupancy and Indoor Air Quality

### Effects of Prolonged Occupancy



Your recreational vehicle was designed primarily for recreational use and short-term occupancy.  Prolonged Occupancy can lead to premature component wear/failure and create conditions, which if not managed properly, may be hazardous to your health and/or cause significant damage to your recreational vehicle.  These types of "Damage" are NOT covered under the Limited Warranty.

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

5.4     Even if a consumer has an opportunity to read an owner's manual cover-to-cover before a purchase, it is impossible to comprehend the extent and seriousness of the health risks, based on the limited information in the Manual. Keystone knows this and has never made a meaningful attempt to conspicuously communicate to consumers what it knows, in any of its advertising, marketing, or website materials.

5.5     Even now, Keystone knows that many consumers buy their RVs with the specific intent of occupying them full-time. Even now, Keystone knows of consumers who are living in their RVs full time, and experiencing serious respiratory problems---and it still refuses to disclose what it knows. Keystone clearly elevates its interest in profits above the health and safety of the very consumers that contribute to its enormous annual revenue.

5.6     Keystone knows that the dissemination of warnings of serious health hazards resulting from the use of its products, will reduce both the volume and pricing of its RVs. Consumers who know that there are significant limitations on the use of an RV, will not pay the same price as an RV without any limitations on the use of the product. And many consumers, who intend to occupy their RVs full time, will not buy a RV which they know pose significant, or substantial, health hazards.

## VI.     CAUSES OF ACTION

### A. Keystone's Violations of The Auto Dealers Act

6.1     The Washington Legislature has declared that "the distribution, sale, and lease of vehicles in the state of Washington vitally affects the general economy of the state and the public interest and the public welfare . . . to prevent frauds, impositions, and other abuses

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

upon its citizens and to protect and preserve the investments and properties of the citizens of this state." RCW 46.70.005. This Legislative declaration provides the basis for the Auto Dealer's Act (ADA), RCW 46.70, et seq.

6.2    The cornerstone of the ADA is section .180(1), which makes it unlawful for vehicle dealers "to cause or permit to be advertised, printed, displayed, published, distributed, broadcasted, televised, or disseminated in any manner whatsoever, any statement or representation with regard to the sale, lease, or financing of a vehicle which is false, deceptive, or misleading . . ."

6.3    The Plaintiffs allege that Keystone had actual knowledge of the real dangers of unventilated RVs, especially to consumers who had a history of respiratory illnesses, but failed to disclose this information. The Plaintiffs further allege that the promotion of Keystone RVs without this disclosure, was "false, deceptive and misleading" under the ADA.

6.4    The ADA a remedial statutory scheme which should be liberally construed.  RCW 46.70.900 provides:

> All provisions of this chapter shall be liberally construed to the end that deceptive practices or commission of fraud or misrepresentation in the sale, lease, barter, or disposition of vehicles in this state may be prohibited and prevented, and irresponsible, unreliable, or dishonest persons may be prevented from engaging in the business of selling, leasing, bartering, or otherwise dealing in vehicles in this state and reliable persons may be encouraged to engage in the business of selling, leasing, bartering and otherwise dealing in vehicles in this state . . .

6.5    Any violation of the ADA is also a per se violation of the CPA. RCW 46.70.310.

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

6.6    A causal link must exist between the deceptive act and the injury suffered in a successful CPA action. Here, none of the Plaintiffs would have purchased a Keystone RV if they knew of the health hazards of using the RV. And those plaintiffs who might purchase a Keystone RV knowing of the health hazards, lost the diminished value of the RV they purchased. This is a cause-in-fact issue which can only be resolved by a jury.

6.7    Each plaintiff in this action alleges that Keystone violated the CPA, as set forth above, and that each plaintiff is therefore entitled to treble damages, attorney's fees, and costs, all as provided by RCW 19.86, *et seq.*

**B. Violations of the Consumer Protection Act**

6.8    The Washington Consumer Protection Act (CPA), RCW 19.86.020, provides:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

6.9    RCW 19.86.090 creates a private right of action by providing:

Any person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action . . . to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee . . .

6.10    The elements of a private CPA claim are: (1) an unfair or deceptive act or practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the plaintiff in his or her business or property; and (5) which injury is causally linked to the unfair or deceptive act.

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

6.11    Keystone RV deceptively and unfairly failed to disclose to consumers what it knew about the dangers of living in a Keystone RV.

6.12    Keystone RV deceptively failed to include any information in its marketing and advertising materials, about the health hazards of occupying its RVs.

6.13    Keystone RV deceptively failed to post any information on its RVs about the health hazards of occupying them.

6.14    Keystone RV deceptively and unfairly refused to disclose information about the health hazards of occupying its RVs, even after Keystone learned that some Keystone owners were suffering from respiratory ailments.

6.15    The Plaintiffs assert that they are each "consumers" of the Keystone RVs which they each purchased.  However, it is not necessary that the plaintiff be a "consumer" to recover under the CPA. *See* Escalante v. Sentry Ins. Co., 49 Wash. App. 375, 387 (1987), *rev. den.*, 109 Wash.2d 1025 (1988). In Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 312-313 (1993), the Washington Supreme Court held:

> The leading CPA case of Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash. 2d 778, 719 P.2d 531 (1986) does not include a requirement that a CPA claimant be a direct consumer or user of goods or in a direct contractual relationship with the defendant . . . there is no language in the Washington act which requires that a CPA plaintiff be the consumer of goods or services.

6.16    A causal link must exist between the deceptive act and the injury suffered in a successful CPA action. Here, none of the Plaintiffs would have purchased a Keystone RV if they knew of the health hazards of using the RV. And those plaintiffs who might purchase a Keystone

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

RV knowing of the health hazards, lost the diminished value of the RV they purchased. This is a cause-in-fact issue which can only be resolved by a jury.

6.17    By virtue of all of the foregoing, the Plaintiffs allege that Keystone RV violated the Consumer Protection Act, which proximately caused the plaintiffs to suffer substantial harm.

## C. The Uniform Commercial Code

6.18    Under the Uniform Commercial Code, a buyer can reject goods for any "nonconformity," including breach of warranty, prior to acceptance.

6.19    U.C.C. § 2-714(2) is not the Uniform Commercial Code's exclusive remedy for breach of warranty.

6.20    For the aggrieved buyer, Article 2 of the Uniform Commercial Code does not stop the buyer from returning the goods to the seller by revoking the acceptance, it does not preclude a suit for primary economic loss under U.C.C. § 2-714 if the buyer chooses to retain the goods, and it does not stop recovery of consequential damages under U.C.C. § 2-715 in any case.

6.21    U.C.C. §. 2-608, the Uniform Commercial Code's revocation section, has particular substantive and procedural requirements: a nonconformity (of which breach of warranty is one type) which substantially impairs the value of the lot or commercial unit; acceptance, either (a) with discovery of the defect, on the reasonable assumption that the nonconformity would be cured or (b) without discovery, reasonably induced by the difficulty of the discovery or by seller's assurances; revocation within a reasonable time after the

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

nonconformity was discovered or should have been discovered; revocation before a substantial change occurs in the condition of the goods not caused by their own defects; and due notice of revocation to the seller.

6.22    A warranty breach is simply one element, the "nonconformity" of the goods, of a buyer's action to revoke under U.C.C. § 2-608 and cancel the contract under U.C.C. § 2-711(1).

### D. Punitive Damages Under Indiana Law

6.23    Washington courts will apply the punitive damages law of other jurisdictions in product liability cases, if warranted under choice of law principles. *See* Singh v. Edwards Lifesciences Corp., 151 Wn.App. 137, 143–44, 210 P.3d 337 (2009). *See also* Bryant v. Wyeth, 879 F.Supp.2d 1214 (W.D. Wash.2012) as to application of choice of law principles.

6.24    Under Indiana Code Section 34-51-3-4, punitive damages in civil cases are limited to three times the amount of compensatory damages, or $50,000, whichever is greater.

6.25    Each plaintiff in this action seeks punitive damages under the Indiana statute.

### E. Injunctive Relief

6.26    The Plaintiffs also seek injunctive relief against Keystone RV, to the extent permitted by the Auto Dealers Act., RCW 46.70, *et seq.,* and the Consumer Protection Act, 19.86, *et seq.*

### VII.    CLASS CERTIFICATION

7.1    This is a class action brought on behalf of all consumers who purchased a recreational vehicle for their personal use. The Class of Plaintiffs is divided into two groups. See pars. 1.5 through 1.8, *supra.*

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA 98020**
**206-527-2700 / 425-582-8165**
**Toll Free / Fax: 888-527-2710**

7.2    For purposes of this Complaint, a recreational vehicle, or RV, includes compact, enclosed living quarters mounted on a frame or chassis with wheels, which is towed behind a motor vehicle. RVs do not include mobile homes, off-road vehicles, or motorized vehicles. Members of the class include persons who own an RV  1) purchased in the State of Washington in the last four years, which was manufactured by a defendant to this action.

7.3    A class action is appropriate where (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. FRCP 23(a).

7.4    In addition, a Plaintiff must comply with one of three sets of conditions set forth in FRCP 23(b). Under FRCP 23(b)(1), a class may be maintained if there is either a risk of prejudice from separate actions establishing incompatible standards of conduct or judgments in individual lawsuits would adversely affect the rights of other members of the class. Under FRCP 23(b)(2), a Plaintiff may maintain a class where the defendant has acted in a manner applicable to the entire class, making injunctive or declaratory relief appropriate. Finally, under FRCP 23(b)(3), a class may be maintained where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy. In the present case, Plaintiffs believe that all subsections of FRCP 23 apply.

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
206-527-2700  / 425-582-8165
Toll Free / Fax: 888-527-2710

7.5    The damages suffered by each Plaintiff of the class may be determined objectively and are capable of calculation.

## VIII.    PROXIMATE CAUSE AND DAMAGES

8.1    Keystone RV's wrongful conduct, all as described above, proximately caused each of them to sustain damages.

## IX.    PRAYER FOR RELIEF

9.1    The Plaintiffs seek the following elements of damage and relief in this action:

a)  an order from the Court requiring Keystone RV to preserve all documents and other evidence relating in any way to health hazards which may result from prolonged occupancy of a Keystone RV or other RV;

b)  actual damages;

c)  consequential damages;

d)  treble damages under Washington's CPA;

e)  punitive damages under Indiana law;

f)  reasonable attorney's fees;

g)  costs;

h)  injunctive relief;

i)  all other relief deemed just and equitable at the time of trial.

DATED THIS 8th day of March, 2018.

**LAW OFFICES OF EUGENE N. BOLIN, JR., P.S.**

By: s/Eugene N. Bolin, Jr.
Eugene N. Bolin, Jr., WSBA #11450
Law Offices of Eugene N. Bolin, Jr., P.S.

COMPLAINT – CLASS ACTION - 24

144 Railroad Ave., Suite #308
Edmonds, WA  98020
Telephone: 425-582-8165
Fax:  888-527-2710
Email:  eugenebolin@gmail.com
Attorney for Plaintiffs

COMPLAINT – CLASS ACTION - 25