The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUDITH COLE, a single person; LOUISE MICHAEL, a single person; DAVID JOHNSON, a single person,

Plaintiffs,

v.

KEYSTONE RV COMPANY, a foreign business entity,

Defendant.

NO. 3:18-cv-05182-RBL

**DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP**

**JURY TRIAL**

I, Joellen Gill, declare that the following is true and correct to the best of my knowledge, under penalty of the laws of perjury of the State of Washington:

1.     I am an adult over the age of 21 and competent to testify.

2.     I have a B.S. in Human Factors Engineering and an M.S. in Environmental Engineering. I have 40 years of experience in Human Factors with emphasis in safety and risk management.

3.     I have worked in the aerospace and national defense industries as a Human Factors Engineer.  I have done theoretical work in the area of safety including warning

DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 1
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

design and effectiveness, as well as providing consulting services to private industry and businesses in the field of safety and risk management.

4.    I am also board certified in Human Factors, a Certified Safety Professional, and a licensed Tribometrist (i.e. one that measures the slip resistance of walking surfaces).

5.    I reviewed the following documents in this case:  1) Amended Complaint (Dkt. No. 5); 2) Chapter 3 of the Owner's Manual for Keystone RV Company (Exhibit 7); 3) Letter dated February 14, 2017, from Keystone RV to Judith Cole (Exhibit 8); 4) Information from Keystone's "Help Center & FAQs" (Exhibit 9); and the Declaration of Dr. David Buscher.  I am providing a summary of my findings and opinions with respect to these deficiencies and an outline for the bases for these opinions.

6.    Summary of Opinions and Conclusions:   The following is a summary of my opinions based on my review of the documents in this matter:

      a. It was, or should have been, foreseeable to Keystone that purchasers of their RVs would "reside" in these RVs for extended periods.

      b. It was, or should have been, foreseeable to Keystone that purchasers of their RVs would not read the Owner's Manual before purchasing a Keystone RV.

      c. It was, or should have been, foreseeable to Keystone that the warnings contained in the Owner's Manual were insufficient and inconsistent with basic principles regarding warning effectiveness.

      d. It was, or should have been, foreseeable to Keystone that purchasers of their RVs may never read the Owner's Manual in its entirety.

      e. Keystone failed to effectively mitigate the hazards of extended occupancy in their RVs.

      f. Every consumer who has purchased a Keystone RV is at risk for avoidable health hazards, because Keystone failed to effectively mitigate those hazards.

DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 2
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

7.     The study of Human Factors is the science that combines the traditional engineering disciplines, such as mechanical engineering, safety engineering, and accident reconstruction (i.e. the study of what caused any type of accident, not merely automotive accident reconstruction), with the science of human behavior, such as human perception, learning and memory, cognition, decision making, response selection and execution, anthropometrics, and the like.

8.     Human Factors evolved in the early 1940's out of the science of accident reconstruction, due to the shortfall in traditional accident reconstructionists whose training was void of the science of human behavior.   Given the success that interdisciplinary teams of engineers/physicists and cognitive psychologists had in determining the underlying root causes of a wide array of accidents, the field of Human Factors was born.

9.     Since that time, Human Factors has evolved and expanded beyond the reactive approach of accident reconstruction to include a proactive approach.   In short, the approach of Human Factors Engineering is to compliment the traditional engineering design process by including within that process consideration of the human component, including its foreseeable failure modes, within the system. By analyzing human behavior, it enables one to understand and predict the likely range of conduct, including failure modes, which may pose a foreseeable and predictable danger to the overall safety of the system.

DECLARATION OF JOELLEN GILL, M.S., CHFP,
CXLT, CSP - 3
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

10.     Human Factors and/or Ergonomics has been a formally recognized discipline since the early 1950s.  There are several associations, or organizations, specific to the field, namely: the International Ergonomics Association, the American Psychological Association, and the Human Factors and Ergonomics Society. I have been an active member since the mid 1970's in each of these groups when I first started studying Human Factors Engineering in undergraduate school.

11.     Currently, there are over seventy American colleges and universities that offer both undergraduate and advanced degrees within the field of Human Factors.  There are a number of specialized scientific and refereed publications in the field, including, but not limited to: The Human Factors and Ergonomics Society Journal, The International Journal of Ergonomics, Theoretical Issues in Ergonomic Science, Applied Ergonomics, and Conference Proceedings from the Human Factors and Ergonomics Society.

12.     It is my understanding that discovery is continuing in this case, thus I reserve the right to expand and/or modify my opinions and their bases as additional information becomes available.  Furthermore, I intend to respond to and comment on any expert opinions that may be offered in support of the Defendant insofar as they fall within my areas of expertise.

13.     I base my findings and opinions on my training, experience, and expertise in the fields of Human Factors Engineering and Safety, as well as certain declarations and Exhibits I have reviewed relevant to my opinions and conclusions.

DECLARATION OF JOELLEN GILL, M.S., CHFP,
CXLT, CSP - 4
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

14.     Attached as an exhibit to this declaration is a copy of my CV that highlights my training, experience, and expertise as it pertains to safety and risk management.  Also attached is a listing of my sworn testimony for the past 5 years.

15.     My fees for work on this matter are $400/hour plus expenses; sworn testimony fees are $450/hour.

16.     The following underlying principles were used to base my opinions:

a. *Engineering Code of Ethics*

The engineering profession's code of ethics sets forth six Fundamental Canons, the first of which states, "Engineers, in the fulfillment of their professional duties, shall hold paramount the safety, health, and welfare of the public."[1]  This fundamental canon is particularly poignant for engineers who design consumer products; that is, products that are put in the general stream of commerce for public use.  Consumers, the general public, rightfully expect that the products they buy and use are properly and safely engineered for their intended as well as foreseeable use.  It is incumbent on design engineers to design and develop products that meet this basic consumer expectation, to design and develop products that hold as paramount the safety, health, and welfare of the general public.  To do otherwise is a violation of the most sacred rule of engineering.

b. *Engineering Design Process*

In order to ensure that a given product or design is safe for its foreseeable uses by its foreseeable user groups, there are a number of basic rules or principles that engineers

---

[1] National Society of Professional Engineers, July 2007, Publication #1102.

DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 5
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

follow throughout all phases of product design, development, and distribution.  These basic rules and principles must be employed throughout the design, development, and distribution process from cradle to grave.

In order to ensure compliance with such basic safety rules, to ensure that any given product is safe for its foreseeable use by the general public, engineers follow a systematic design process.  Embedded throughout a systematic design process, from the design concept phase to end of the product's useful life, including disposal (i.e. cradle to grave), is a process typically referred to as a "hazard analysis".  A hazard analysis is a systematic process created to identify foreseeable hazards associated with a given design and/or product.  In short, it consists of the identification of three key factors: (1) the characteristics of the foreseeable user population; (2) the foreseeable manner in which the product will be used; and (3) the foreseeable operating conditions/environment in which the product will be used[2].  A matrix of all possible combination of conditions for these three factors is then utilized to identify known and/or foreseeable hazards.

The hazards of greatest concern to engineers are those with the most serious potential consequences.  This is particularly true for hazards for which it can reasonably be anticipated that some of the foreseeable users will not fully appreciate the underlying nature of the hazard (i.e. what factors/conditions can lead to the creation and/or exposure to the hazard), as well as for hazards for which the potential severity of the injury will be not be

---

[2] Brauer, Roger E.,  Safety and Health for Engineers, John Wiley & Sons, 2006

DECLARATION OF JOELLEN GILL, M.S., CHFP,
CXLT, CSP - 6
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

fully appreciated and/or underestimated.  The rationale for such heightened concern is that in order to properly protect one's self, the potential victim(s) must fully understand and appreciate what the hazard is, how they might be exposed to it, and the full extent/severity of its potential consequences; without full knowledge of these three key factors, the potential victim(s) cannot take the steps necessary to reasonably protect themselves from a hazard that is known to the engineer, yet unknown, or at the very least, underappreciated, by the consumer or potential victim(s).

As noted above, a hazard analysis must be embedded throughout the life of the product.  Typically, a hazard analysis is broken up into two key phases; *a priori* and *post hoc*.  The *a priori* phase is initiated at the beginning of the design concept phase and continues throughout the design process until the product is put into the stream of commerce.  Its purpose is to ensure, as best as possible, that only a reasonably safe product (i.e. one free of recognized and foreseeable hazards) is offered to the general consumer; this is often referred to as proactive safety.  The *post hoc* phase is ongoing throughout the remaining life of the product; such hazard analyses are particularly important as accidents, injuries, and/or near misses occur.  The reason for *post hoc* hazard analyses is to correct any shortcomings in the original design, as unforeseen or improperly controlled hazards come to light; the *post hoc* phase is often referred to as reactive safety.  The notion is quite simple; by continuing to follow a product post production, engineers can identify and correct improperly/ineffectively mitigated hazards, and implement design corrections so that history (i.e. injuries, deaths, decreased useful product life) does not repeat itself.

DECLARATION OF JOELLEN GILL, M.S., CHFP,
CXLT, CSP - 7
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

As foreseeable hazards are identified, either *a priori* or *post hoc*, steps must be taken to eliminate, or if that is not possible to minimize, the risk of exposure to the hazard (i.e. minimize its likelihood of occurrence as well as its potential severity).  This is accomplished by a three-step hierarchical process often referred to as the Safety Hierarchy, a process first promulgated in the early 1920s by the National Safety Council and set forth by virtually all engineering design textbooks since that time.

The first tier or the best alternative in the Safety Hierarchy is "Safety by Design". That is, redesign the product so as to either eliminate the hazard or remove the user from the vicinity of the hazard; this is the first tier in the safety hierarchy because it is by far the most effective means of providing for the safety of the general public.  If for some reason Safety by Design is not possible or feasible, the second-best alternative is "Guarding" or providing a barrier between the user and the potential hazard.  However, one should **only** resort to a lesser effective level (i.e. chose Guarding over Safety by Design), if and only if it is not possible to implement the more effective level.  The final tier is "Persuasion Control", using warnings, instructions, training, or other types of human intervention in an attempt to provide for the safety of the general public or end user.   One should only resort to Persuasion Control as a "last resort" as it is known to be so limited in its effectiveness (i.e. see discussion below on Effectiveness of Warnings.)

It is beyond the scope of my retention in this matter to engage in a detailed analysis of various methods whereby Keystone could have implemented either Safety by Design or Guarding; the focus of my analysis is on the Persuasion Control aspects (i.e. Chapter 3 of

DECLARATION OF JOELLEN GILL, M.S., CHFP,
CXLT, CSP - 8
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

the Owner's Manual, Help Center FAQ's) of the design of the subject Keystone RVs. Notwithstanding, it is emphasized that it would be a gross violation of basic engineering design rules and principles, including a violation of the Safety Hierarchy, for any manufacturer to rely on Persuasion Control techniques without having first thoroughly investigated Safety by Design and/or Guarding alternatives.  It would be a disregard for public safety for a manufacturer to make the decision to bypass due consideration of Safety by Design and Guarding, and to thereby rely solely on Persuasion Control given the egregious nature of this hazard (i.e. unknown and/or under-appreciated hazard by the potential victims and the likely severity of the injury).

In fact, in situations wherein the hazard is likely to be underappreciated, and the potential consequences severe, an engineer/manufacturer should re-evaluate the decision to proceed forward with the existing design given the limited effectiveness of Persuasion Control techniques to effectively alter user behavior.  If the engineer and/or manufacturer makes the decision to continue forward and rely solely on Persuasion Control as a means of controlling such hazards, it is absolutely critical that every effort be made to ensure that the design of such materials is consistent with the state of the art (i.e. proper format, proper location, proper content, clear, concise, consistent, and so forth) so as to increase the potential of affecting the desired behaviors.  Furthermore, under such circumstances it is also critically important to not only pre-test the effectiveness of the proposed Persuasion Control designs, but to monitor their effectiveness in the field.

DECLARATION OF JOELLEN GILL, M.S., CHFP,
CXLT, CSP - 9
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

c. *Basic Research Regarding Warning Effectiveness*

A product may meet all necessary standards of design and contain no production flaws, yet still be dangerous because instructions for use or warnings about dangers during use are inadequate or absent.  In the early 1970's, Human Factors researchers began to question the efficacy of warnings, instruction manuals, and the like to alter human behavior. In 1984, McCarthy, *et al.* published their classic paper entitled "Product Information Presentation, User Behavior, and Safety"[3], wherein they reviewed approximately 400 published research articles in the field of on-product warnings.  In the paper, McCarthy and his colleagues concluded: "No scientific evidence was found to support the contention that on-product warning labels measurably increase the safety of any product."  In a 1986 follow-on study Horst, *et al.* concluded, "The implications for on-product warnings for consumer products are that they are likely to be ineffective in preventing accidents because most consumer products are reasonably safe and familiar, and because on-product warnings often address hazards that do not manifest themselves during most of the time the product is being used.  These characteristics, in and of themselves, probably undermine the credibility of on-product warnings as a class."[4]

---

[3] McCarthy RL, Finnegan JP, Krumm, Scott S, McCarthy GE; Product information presentation, user behavior, and safety. Pro*ceedings of the Human Factors Society,* 28th annual meeting, 1984.

[4] Horst, D. P, McCarthy, G. E., Robinson, J. N., McCarthy, R. L., Krumm-Scott, S. (1986); Safety Information Presentation: Factors Influencing the Potential for Changing Behavior. *Proceedings of the Human Factors Society.*

DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 10
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

This is not to say that no on-product warning will ever be effective at altering and/or creating the desired human behavior.  However, it is basic scientific information that the design engineer and/or manufacturer of consumer products must take into account as they make their decisions regarding the design of any given product, particularly for products with foreseeable hazards with severe potential consequences and for which it is known and expected that the consumer or end user will under appreciate the hazard and its consequences.  At the very least, proposed warnings for such products must be tested to verify they are adequately altering/creating the desired user behavior; even then, one must question the wisdom of designing/producing a product wherein warnings/instructions are the only means of controlling a serious life-threatening hazard that is under appreciated by the general user.

Research has shown that there are several important minimum criteria that must be met if warnings are to be effective at creating the requisite behavior.  For example, a warning must attract the user's attention, motivate the user to read and process the information, and have sufficient credibility.[5]  Even if a warning is noticed, that does not mean that the user is likely to read it, much less read all of its contents, particularly if it is unduly burdensome to do so.  That is, we live in an information rich society; it is not possible to read and process all of the information we encounter in everyday life.  Research has shown that the typical consumer is a selective information processor.  That is, we selectively

---

[5] Sanders, Mark S., and McCormick, Ernest J.;  Human Factors in Engineering and Design,  McGraw-Hill, Inc., 1976.

DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 11
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

attend to and process a subset of the information that is available to us; a long wordy warning is not likely to be read.  If the consumer believes they know how to use a given product or if they perceive the product is relatively easy to use and that they have sufficient skills/knowledge to use it safely, they are unlikely to read warnings.[6]

Even if the user's attention can be captured by a warning and they can be persuaded to read it, that still is not sufficient to create the requisite behavior.  For example, in a 1986 study published by Ayres, *et al.*, they found that, "If the warning conflicts with previous experience or the examples set by others, it may not be believed; manufacturers may have little or no credibility, given the clutter of continuously-present warning labels, many prompted by litigation."[7]

The content of a warning is another important factor in determining its likely ability to create the desired behavior.  To be effective, a warning must clearly convey to the user the precise nature of the hazard and what its potential consequences are; simply stating something can cause severe injury or death is not sufficient.  In addition, an effective warning must clearly convey the actions necessary to control the hazard and its

---

[6] Goldhaber, G.M., deTurk, M.A;  Effects of Consumer's Familiarity with a Product on Attention and Compliance with Warnings,  Journal of Products Liability, 11, 29-37 (1988).

[7] Ayres, Thomas J., Gross, Madelaine M., Wood, Christine T., Horst, Donald P., Roman, R. Beyer, Robinson, J. Neil;  What is a Warning and When Will it Work?  Proceedings of the Human Factors and Ergonomic Society Annual Meeting, October 1989.

**DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 12**
3:18-cv-05182-RBL

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone: 425-582-8165**
**Toll Free / Fax: 888-527-2710**

consequences.  A user must fully appreciate all three of these components in order for a warning to be effective at creating the desired behavior.[8]

Lastly, another important factor that affects the ability of a warning to create the desired human behavior is the cost of compliance.  This does not mean strictly the financial cost necessary to comply with the warning, but rather this concept is broader and more encompassing.  It includes factors such as time, enjoyment, and the ability to conform to the warning, particularly in "real time" or in the moment.  In other words, as the overall "cost" of complying with a warning increases, the likelihood of the user complying with the warning decreases.[9]

17.    The specific hazard in this case is the foreseeability (i.e. by Keystone) of an unhealthy environment in their RVs due to excessive moisture production., and different molds that such an environment typically produces.  This overarching hazard is exacerbated by specific design issues that result in leaks and condensation (e.g. rainwater, faucets, shower, toilet, cooking, breathing, and so forth), slow warranty service, and the lack of adequate ventilation for expected use.  An ancillary issue present in the Keystone RVs is the presence of the chemical Formaldehyde in some of the RV materials.

---

[8] Laughery, K.R., Rowe-Halbert, A.L., Young, S.L., Vaubel, K.P., and Laux, L.F.; Effects of explicitness in conveying severity information in product warnings.  Proceedings of the Human Factors and Ergonomics Society 35th Annual Meeting (pp. 481-485),  Santa Monica, CA;  Human Factors and Ergonomics Society (1991).

[9] Wogalter, M.S., McKenna, N.A. and Allison, S.T.;  Warning compliance:  Behavioral effects of cost a consensus.  Proceedings of the Huan Factors and Ergonomics Society 32nd Annual Meeting, 2, 901-904 (1988).

DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 13
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

18.     While excessive moisture as well as the presence of Formaldehyde can lead to adverse health issues, it is my understanding that this matter relates to economic damages from the defective RVs rather than any physical injury.  Notwithstanding, my analysis would not differentiate between these two categories of "damages"; they both result from the same condition and adverse health issues resulting from the RV environment can certainly result in economic losses.

19.     As discussed in detail above, once a hazard has been identified, the appropriate mitigation strategy should follow the Safety Hierarchy.  In this case, Keystone RV failed to mitigate the hazard *vis-à-vis* Safety by Design or Guarding, and instead relied solely on the third and least effective strategy:  attempting to alter behavior to protect their customers.  Such a strategy is well-known to be ineffective; and the specific facts of this case reveal such an expected result.

20.     Warnings and Instructions:  Miscellaneous Principles in the Design of Warnings and/or Hazard Communications system:  The overall hazard communication pertaining to the excessive moisture production in the owner's manual violated a number of basic principles pertaining to the design of an effective hazard communications system; for example:

- Warnings are a supplement to, not a substitute for, other safety approaches (i.e., such as safety by design and guarding).

- The purpose of a warning is to improve safety, influence behavior, and provide information to understand the hazard so the user can make an informed decision.

- The most important rule for warnings is their design should be an integral part of the overall design process; they should not be considered for the first time after the design of the product/activity is complete.

DECLARATION OF JOELLEN GILL, M.S., CHFP,
CXLT, CSP - 14
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

- Warnings should be salient, prominent, and conspicuous.

- Comprehension testing is a necessary part of warning development.

- Consumers only select the most important parts of collateral information to read.

- To be adequately informed of a hazard and its associated risk, the user must understand the hazard, how to avoid it, and its consequences; frequently users' knowledge is incomplete, particularly for unapparent hazards.

21.   Specific deficiencies in the Owner's Manual:

i.     Research has shown that users do not reliably read owner's manuals and/or if they do consult owner's manuals it is for specific information rather than a comprehensive review.[10]

ii.    Critical safety information should be placed in a prominent position in the front of the manual where it would be more likely to be detected.

a.     Page 1 of the manual includes the following admonition: *"To help get you started, please take a few minutes and review the Owner's Manual thoroughly."* As stated, this is a request, not a requirement.  Furthermore, the manual is nearly 90 pages in length; suggesting a thorough review in a few minutes detracts from the credibility of the document.

---

[10] Brad Mehlenbacher, Michael S. Wogalter, and Kenneth R. Laughery;  On the Reading of Product Owner's Manuals:  Perceptions and Product Complexity, Proceedings of the Human factors and Ergonomics Society 46th Annual Meeting, (2002).

**DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 15**
3:18-cv-05182-RBL

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone: 425-582-8165**
**Toll Free / Fax: 888-527-2710**

b.      Page 2 of the manual describes various "note boxes" used throughout the manual.  The note box that is used later in the manual to describe this specific hazard has been identified as CAUTION, which is defined as "*indicates a potentially hazardous situation that, if not avoided, may result in minor or moderate injury.*" Such a benign description is misleading.

iii.    Chapter 3: Effects of Prolonged Occupancy and Indoor Air Quality:

a.      The CAUTION box states "*Your recreational vehicle was designed primarily for recreational use and short-term occupancy.*"  Such a statement is vague; it does not define "short-term", nor does the Glossary in the Owner's Manual define this term.  Furthermore, the term "primarily" could foreseeably be interpreted by a user that a secondary design consideration was for permanent use.  That is, there is nothing in this statement that prohibits "prolonged occupancy."

b.      This Chapter discusses the importance of "good indoor air quality", without giving the owner any information as to how to measure or identify "poor air quality".  Rather this Chapter includes such vague statements as:

- Avoiding unnecessary air pollutants

- Bringing in enough outdoor air to dilute emissions from indoor sources

- High temperatures and high humidity levels can increase concentrations of some air pollutants

- Those people most at risk for poor indoor air quality include people with allergies, children and the elderly

DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 16
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

22.     The point to be made is that these and other statements do not provide the most critical information that owners need:  a clear statement of the hazard, how to avoid the hazard, and consequences should one fail to follow the warning.

c.     Chapter 3 also includes recommendations by the CDC and EPA for improving air quality; again, these are not identified as requirements.  If owners do not recognize poor air quality, they would not reliably follow these recommendations.

iv.     It is foreseeable based on the Human Factors literature described above that owners will not be searching for any information regarding the ventilation system.

23.     Deficiencies in Verbal Communication:  It is my understanding that at the time of initial purchase of their RV, each of the Plaintiffs informed the dealership that their intention was to live in the RV for extended periods.   As such, an effective hazard communication would have been to inform the Plaintiffs at that time that such a use would not be advised given the deficiencies in the RV ventilation system; the expected hazards should have been communicated to the Plaintiffs as well so that they could make an informed decision.   Instead, no concerns regarding "prolonged occupancy" were relayed to the Plaintiffs, nor were they even given the opportunity to read the Owner's Manual (and more specifically Chapter 3) prior to their purchase.

24.     The point here is that potential RV customers are kept in the dark regarding potential hazards associated with the RV until *after their purchase*, at which time they are given a deficient Owner's Manual that fails to comply with basic safety principles.

25.     Conclusions:  Engineering has a direct and vital impact on the quality of life for all people; as such, engineers are expected to exhibit the highest standards of honesty and integrity. Accordingly, Professional Engineers, including vehicle design engineers, must subscribe to a professional Code of Ethics.  This code includes the following as a

DECLARATION OF JOELLEN GILL, M.S., CHFP,
CXLT, CSP - 17
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

Fundamental Canon:  Engineers in the fulfillment of their professional duties, shall hold paramount the safety, health and welfare of the public.

26.     Keystone's failure to ensure the design of their RVs was safe for all foreseeable vehicle owners under expected conditions, either through design or effective hazard communication, was a violation of this long-standing code and put their customers at risk of personal injury and/or economic loss.

27.     Again---every consumer who has purchased a Keystone RV is at risk for avoidable health hazards during their use of the RV, because Keystone failed to effectively mitigate those hazards.

DATED THIS 15th DAY OF NOVEMBER, 2019, at Mica, Washington.



_____

Joellen Gill, M.S., CHFP, CXLT, CSP

**DECLARATION OF JOELLEN GILL, M.S., CHFP,**
**CXLT, CSP - 18**
3:18-cv-05182-RBL

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone: 425-582-8165**
**Toll Free / Fax: 888-527-2710**

1

## DECLARATION OF SERVICE

I hereby certify that on the 18th day of November, 2019, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following persons:

Joseph P. Corr, WSBA #36584
Corr Downs PLLC
100 W Harrison St., Ste. N440
Seattle, WA  98119-4163
Phone:  206-962-5042
jcorr@corrdowns.com

James C. Percy (*pro hac vice*)
8555 United Plaza Blvd., 5th Floor
Baton Rouge, LA   70809
jpercy@joneswalker.com
Telephone:  225-248-2130

Ryan E. Johnson (*pro hac vice*)
8555 United Plaza Blvd., 5th Floor
Baton Rouge, LA   70809
rjohnson@joneswalker.com
Telephone:  225-248-2080

Attorneys for Defendant Keystone RV
Company

I affirm under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct to the best of my knowledge.

DATED this 18th day of November, 2019, at Edmonds, WA.

**LAW OFFICES OF EUGENE N. BOLIN, JR., P.S.**
s/Eugene N. Bolin, Jr.
Eugene N. Bolin, Jr., WSBA #11450
Attorney for Plaintiffs
144 Railroad Ave., Ste. 308
Edmonds, WA  98020
Email:  eugenebolin@gmail.com
425-582-8165

DECLARATION OF JOELLEN GILL, M.S., CHFP, CXLT, CSP - 19
3:18-cv-05182-RBL

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
Toll Free / Fax: 888-527-2710

**Applied Cognitive Sciences**

**Joellen Gill, M.S., CHFP, CXLT, CSP**
1050 South Lambs Lane, Mica, WA 99023
phone/fax: (509) 624-3714
joellen@ACSciences.com

**LICENSE:**

Certified Human Factors Professional, 2006-present
      By the Board of Certification in Professional Ergonomics
      License Number: 1392

Certified XL Tribometrist, 2005-present
      By the International Safety Academy
      License Number: 170

Project Management Professional, 1993-present
      By the Project Management Institute
      Certification Number: 1384

Certified Safety Professional, 2013-present
      By the Board of Certified Safety Professionals
      Certification Number: 24124

**EDUCATION:**

Colorado School of Mines, 1994
      M.S. in Environmental Engineering

University of Northern Colorado, 1988
      Masters in Business Administration

Wright State University, 1979
      B.S. in Human Factors Engineering

**PROFESSIONAL EXPERIENCE:**

*Human Factors Engineering Consultant for Applied Cognitive Sciences (1994-present):* I have worked as a research associate, human factors engineering associate, and senior engineer on several hundred legal cases, for both the plaintiff and defense, nationwide; I am currently the owner and President of Applied Cognitive Sciences. The focus of my work has been in safety and risk management; my areas of expertise include, but are not limited to: facility design and fall-at-elevation accidents, industrial accidents, automotive accident reconstruction, workplace injuries, consumer products, and Warnings. I have also worked on human factors engineering consulting projects for private industry, again with an emphasis in safety and risk management; projects have included work for: Anchor Industries, City of Snohomish, and the American Fun Cart Association, Cam-X Crossbows, and the Davis Company.

*Project Manager for EG&G (1992–1994):* I was responsible for Environmental Restoration projects from conception and initial design through test and close-out. This included overall responsibility for safety and risk management issues of the project, as well as maintaining scope, schedule and budget baselines, preparation of all required documentation, and overall leadership, management, and coordination of multi-functional disciplines in order to maximize program effectiveness and efficiency.

*Senior Principal Engineer for EG&G (1990-1992):* I was responsible for the development and implementation of plant wide systems in

accordance with Department of Energy Orders and Best Industry Practice. This included programs for Root Cause Analysis (i.e. so as to determine the underlying causes of accidents and near misses so that corrective action could be implemented), Lessons Learned, Occurrence Reporting, and Document Control.

*Principal Engineer for Rockwell International (1983-1990):* This position required a Department of Energy Q Clearance. I was responsible for the development of new weapons programs and served as the principal contact on technical matters with customers. Responsibilities included task analyses for unique processes in order to identify and mitigate safety and risk management issues.

*Human Factors Engineer for Martin Marietta Aerospace (1979-1983):* This position required a Secret Security Clearance. I was responsible for the Human Factors Engineering on the MX Missile System, including safety and risk management issues. In this position I conducted analyses in all phases of the design, development, and manufacturing cycles of the MX Missile to ensure the Instrumentation and Flight Safety System was operable and maintainable by the 5th through 95th percentile Air Force technician. In addition, I developed detailed procedures for system operation and maintenance.

## HONORS AND AWARDS:

- Graduated *summa cum laude* at Colorado School of Mines, (GPA 3.9 out of 4.0), 1994
- Graduated *summa cum laude* at University of Northern Colorado, (GPA 4.0 out of 4.0), 1988
- Best Presentation Award at Martin Marietta Aerospace, 1980
- Graduated *summa cum laude* at Wright State University, (GPA 3.9 out of 4.0), 1979
- Outstanding Senior Engineer at Wright State University, 1979
- W.S.U. Foundation Scholarships, 1977 and 1978

## PRESENTATIONS:

Gill, J. "Short Course in Human Factors & Safety." Invited Presentation by the Washington State Association for Justice, May 2015

Gill, J. "Forensic Applications of Human Behavior." Invited Presentation by the Washington State Association for Justice, November 2013

Gill, J., Gill, R., and Colcombe, A. "Safety by Design: Not Always." Invited Presentation by the Idaho Trial Lawyers' Association, September 2013

Gill, R. and Gill, J. "Safety by Design: Not Always." Invited presentation by the 360 Advocacy Institute, February 2009

Gill, J. and Gill, R. "Human Factors in Litigation." Invited presentation by the Washington State Trial Lawyer's Association, October 2006

## PROFESSIONAL ACTIVITIES:

- Member of Human Factors and Ergonomics Society
- Member of ASTM International
- Member of Illuminating Engineering Society of North America
- Member of National Safety Council
- Member of System Safety Society

## CONTRACTS:

- Evaluation of Product Label and Safety Instructions for Multi-Plug; Davis Company; co-investigator; 2018
- Evaluation of On-Product and On-Manual Warnings, CamX Crossbows, 2016
- Testing and Evaluation of "Safe Steps Floor Treatment" on University of California Riverside campus, principal investigator, 2010
- Evaluation and Development of a Fire Shelter Warning System for Anchor Industries, principal investigator, 2006
- Safety Analysis of Electronic Billboards, City of Snohomish, co-investigator, 2005
- Evaluation of Warning Label Designs, American Fun Kart Association, co-investigator, 2002



Applied Cognitive Sciences

**Sworn Testimony for Joellen Gill, M.S., CHFP, CXLT, CSP
As of November 7th , 2019**

<u>2019</u>
**Trials:**

1. Milburn v Honda; Dallas County, Texas
2. Lewis v C.R England, et al.; Sacramento County, California
3. Aquino v A & M Respicio, Inc.; Kitsap County, Washington
4. Towell v Lee; Boise County, Idaho
5. Ravichandran v Yokomizo; Los Angeles County, California
6. Emerson v Harris—Perpetuation Deposition; King County, Washington
7. Shourds v Curley, et al.—Perpetuation Deposition; Lake County, Montana
8. Newbold v Correll; Deschutes County, Oregon
9. Sutton v Tracey; Los Angeles County, California
10. Yarborough v Nampa Highway District; Canyon County, Idaho
11. Hodny v McDonalds; Cass County, North Dakota
12. Vo, Estate of v City of Tacoma; Pierce County, Washington
13. Fite v City of Puyallup, et al.; Pierce County, Washington

**Depositions/Arbitrations:**

1. Heath v Tristar; District Court; Nevada
2. Lewis v C. R. England, et al.; Sacramento County, California
3. Ravichandran v Yokomizo; Los Angeles County, California
4. Newton v City of Port Townsend; Jefferson County, Washington
5. KeKona v Alaska Airlines; King County, Washington
6. Wilson v Utah DOT; Utah County (Provo Department), Utah
7. Oliver v Parking Company of America, Inc.; Dallas County, Texas
8. Caudill, Terry v 3M/A-O Companies; Commonwealth of Kentucky
9. Adams, James; Adams, Dennis; Kincer, Dwight v 3M/A-O Companies; Commonwealth of Kentucky
10. Walker, Joey v 3M/A-O Companies; Commonwealth of Kentucky
11. Huff, James v 3M Company; Commonwealth of Kentucky
12. Reisser v Silverdale Whaling Company, LLC; Kitsap County, Washington
13. Fox v PetCo Animal Supplies Stores, Inc.; Clark County, Nevada
14. Conciatore v Paris Las Vegas; Clark County, Nevada
15. McFadden v Gozzer Ranch Golf Club, et al.; Kootenai County, Idaho
16. Robinson v Crown Equipment Corporation; Washoe County, Nevada

17. Osborne, Carlo/Gilbert, Ace v A-O Company; Commonwealth of Kentucky
18. Blevins, Lewis/Shanks, Greg v A-O Company; Commonwealth of Kentucky
19. Banks, Michael/Lucas, Timothy v A-O Company; Commonwealth of Kentucky
20. Sutton v Tracey; Los Angeles County, California
21. Vo, Estate of v City of Tacoma; Pierce County, Washington
22. Hatfield v 3M/A-O Companies; Commonwealth of Kentucky
23. Kitzhaber v Avis Budget Group, Inc.; King County, Washington
24. Shupp v Wal Mart, Inc.; Western District of Washington (Seattle)
25. Ayyaluru v Hnosko, et al.; King County, Washington
26. Koernschild v Stevens Pass Mountain Resort, LLC; King County, Washington
27. Reese, Estate of v JAC Trucking; Los Angeles County, California
28. Salinas v Nissan Motor Company, LTD, et al.; Los Angeles County, California
29. Vo, Estate of v City of Tacoma (Continuation); Pierce County, Washington
30. Lee, et al v ITWFEG; Santa Barbara County, California
31. Salazar, Estate of v El 7 Mares Restaurant; Los Angeles County, California
32. Carmeli, Estate of v Blakely; San Diego County, California
33. Jayne, Estate of v City of Sioux Falls; District Court, South Dakota
34. Stout v Foss Maritime Company; King County, Washington
35. Naef v Wyndham Worldwide; Orange County, California
36. Oum, Estate of v Ramos, et al; Los Angeles County, California
37. Tricoli, Estate of v Palmero; Clark County, Nevada
38. Crume, et al. v State of Washington; Thurston County, Washington
39. Ruknaitis v Potolicchio; San Diego County, California
40. Akers v Wang, et al.; Sacramento County, California
41. Willhide v Mammoth Ski Area; Mono County, California

## 2018
**Trials:**
1. Beaushay v Fairway Meadows Apartments, LLC; Kootenai County, Idaho
2. Schibel v STCU; Spokane County, Washington
3. Clanton v Fiserv, Inc., et al.; Ventura County, California
4. Cox v 3M Company; Commonwealth of Kentucky
5. Garcia-Guasch v Nichols, et al.; Washington County, Oregon
6. Roberto v CRST Lincoln Sales, et al.; Riverside County, California
7. Simone v Jameson; Orange County, California
8. Henderson v Forrest Creek Alliance; King County, Washington
9. Soulliere v Suzuki, Inc.; Orange County, California
10. Ross v Palace Station; Clark County, Nevada
11. McNeal v Genie Industries, Inc.; King County, Washington

**Depositions/Arbitrations:**
1. Risley v Circus Circus Casinos, Inc.; Clark County, Nevada
2. Saeed, Estate of v USA; Western District, Washington
3. Williams v 3M Company; Commonwealth of Kentucky
4. Selby v Amtrak; Western District (Tacoma), Washington
5. Clanton v Fiserv, Inc., et al.; Ventura County, California
6. Foster v Poppie, et al.; Chelan County, Washington

2

7. Brady v McDonalds Restaurants, et al.; Skagit County, Washington
8. Selgado v Rogers; Los Angeles County, California
9. Hammons v State of Washington; Thurston County, Washington
10. McClure v Amerigo, Inc., et al.; Bannock County, Idaho
11. Barajas v Woodcreek, Eaton& Cooper, et al.; Clark County, Nevada
12. Kaesbauer v Aquarius Gaming, LLC., et al.; Clark County, Nevada
13. Milburn v Honda, et al.; Dallas County, Texas
14. Evans v Spokane County; Spokane County, Washington
15. Nordlund v State of Washington; Thurston County, Washington
16. Walker v WSDOT; Spokane County, Washington
17. Terry v 3M Company; Commonwealth of Kentucky
18. Rider v Kawasaki Motors, et al.; Central Division, District of Utah
19. Morrison v Natrona County School District; Natrona County, Wyoming
20. Rutherford v Seattle Pacific University; King County, Washington
21. Kynes v Spokane Raceway; Spokane County, Washington
22. Segal v Quadrant Lake Union Center OA; King County, Washington
23. Bennett v Eden's Villa, et al.; King County, Washington
24. Schiro v Boyen USA, Inc.; Pierce County, Washington
25. Miller v Mead School District #354; Spokane County, Washington
26. Hannah v Discovery Sea Kayaks, et al.; San Juan County, Washington
27. Soulliere v Suzuki, Inc.; Orange County, California
28. Morales v Double V (McDonalds); Clark County, Nevada
29. Balle v Summerlin Community Assoc., et al.; Clark County, Nevada
30. Soto v Highland Park Apartments; Pierce County, Washington
31. Black v Pride Mobility Products, et al.; Western District, Washington
32. Hall (Gaddy) v 3M/A-O Companies; Commonwealth of Kentucky
33. Rose v A-O Company; Commonwealth of Kentucky
34. Coleman v 3M/A-O Companies; Commonwealth of Kentucky
35. Isaac v 3M/A-O Companies; Commonwealth of Kentucky
36. Garcia-Zuniga v Mushiana Transport Company, et al.; Clark County, Nevada
37. Rush v American Honda Motor Co., Inc.; Los Angeles County, California
38. Aquino v A&M Respicio, Inc.; Kitsap County, Washington
39. Gates v Goree; King County, Washington
40. Landon v Mt. Baker Ski Area; Whatcom County, Washington
41. Shourds v Curley, et al.; Lake County, Montana
42. Rider v Kawasaki Motor Corp.; Central Division, Utah
43. Albi v Deer Run Limited Partnership; Spokane County, Washington
44. Slone/Burke v 3M/A-O; Commonwealth of Kentucky

## 2017
**Trials:**

1. Morrison v Stone; Teton County, Idaho
2. Smith v Bouwfonds Seasons GP, LLC; Snohomish County, Washington
3. Saltzberg v Chuckanut Capital, LLC; King County, Washington
4. Munro v Tiara Imperial HOA; Los Angeles County, California
5. Severson v The Beacon; Kootenai County, Idaho
6. Iverson v Munn; Benton County, Washington
7. Escamilla v County of San Bernardino, et al.; San Bernardino County, California

8.  Slater, et al. v Northgate Mall; King County, Washington
9.  Overbee v 3-M Company; Commonwealth of Kentucky
10. Wilson v Lincoln County Hospital District 13; Lincoln County, Washington
11. Foster v Lee; Ventura County, California
12. Sithisombath v Nguyen; Orange County, California
13. Xu v City of Issaquah; King County; Washington


**Depositions/Arbitrations:**
1.  Schmaljohn v Cho; King County, Washington
2.  Moncada v Transdev d/b/a Veolia Transportation, Inc; Clark County, Nevada
3.  Mulalley v City of Lewiston; Nezperce County, Idaho
4.  Cochran v Seattle Housing Authority; King County, Washington
5.  Guilford v Tacoma General Hospital; Pierce County, Washington
6.  Carlisi v Aria Resort; Clark County, Nevada
7.  Collins, et al v 3-M Company, et al.; Commonwealth of Kentucky
8.  Slater, et al. v Northgate Mall; King County, Washington
9.  Pilkington v Whitworth Water District; Spokane County, Washington
10. Martin v City of Los Angeles; Los Angeles County, California
11. Munro v Tiara Imperial Apartments; Los Angeles County, California
12. Trachsel v Lilly Lakes Estates;  District of Kodiak, Alaska
13. Caudill, et al. v American Optical Corp; Commonwealth of Kentucky
14. Seifert v City of Richland, et al.; Benton County, Washington
15. Burton v City of Davis; Yolo County, California
16. Simone v Jameson; Orange County, California
17. Hohenstein v Los Ninos, LLC, et al; Gallatin County, Montana
18. Morris v Whitman County; Spokane County, Washington
19. Martinez v City of Tacoma; Pierce County, Washington
20. Simone v Jameson; Orange-Central County, California
21. Lovett v 61 Madison, Inc., et al; Cook County, Illinois
22. Manley v Sorrell; King County, Washington
23. Gardiner v Trader Joe's Company; King County, Washington
24. Garcia v Spokane County; Spokane County, Washington
25. Foster v Lee; Ventura County, California
26. Casteneda v Longhorn; Clark County, Nevada
27. Paeschke v General Motors; Eastern District; Washington
28. Roberto v CRST Lincoln Sales.; Riverside County, California
29. Overbee v 3-M Company; Commonwealth of Kentucky
30. Escamilla v County of San Bernardino, et al.; San Bernardino County, California
31. Johnson v Ford Company; Federal Court, Huntington, West Virginia
32. Ellis v Russell; Spokane County, Washington
33. Gish v Nth Degree, Inc.; Clark County, Nevada
34. Byrne v 48th Place Association, LLC; et al.; Jackson County, Missouri
35. Brown v Sam's Club West; US District Court, District of Nevada
36. Brice v Toyota, et al.; Santa Fe County, New Mexico
37. Swalko v City of Seattle; King County, Washington
38. Sithisombath v Nguyen; Orange County, California
39. Cudgma v Precision Motors, LLC, et al.; Stamford/Norwalk, Connecticut

4

40. Wilson v Lincoln County Hospital District 3; Lincoln County, Washington
41. Mabbutt v City of Seattle; King County, Washington
42. Ogelsby v LeMay-America's Car Museum; Pierce County, Washington
43. Broers v WSDOT; Grant County, Washington
44. Greenwood v City of Blaine; Whatcom County, Washington
45. Brewer v I-Guard International K-9 Services, LLC; Spokane County, Washington
46. Arias, Estate of v Yakima PD, et al.; Yakima County, Washington
47. Santellanes v Elsinore Woman's Club; Riverside County; California
48. Choe v Goodwill, et al.; Pierce County, Washington
49. Swarthout v Forward Air Solutions; San Luis Obispo County, California
50. Hall v 3-M Company; Commonwealth of Kentucky
51. Brock v Columbia Center Partnership; Benton County, Washington
52. Thomas v UPRR, et al.; Dallas County, Texas
53. Beaushay v Fairway Meadows Apartments, LLC; Kootenai County, Idaho
54. Gallo v Holland America Line; Western District, Washington

## 2016
**Trials:**
1. Moctezuma v Big Lots; Los Angeles County, California
2. Alcala v City of Los Angeles; Los Angeles County, California
3. Weber v URM Stores, Inc.; Spokane County, Washington
4. Visuwan v Circus Circus Casinos Inc, et al.; Clark County, Nevada
5. Chenoweth v Mercer Island; King County, Washington
6. Glaser (Trees) v Sorenson; King County, Washington
7. Dawood v Mercedes Benz (Perpetuation); Western District, Washington
8. Jarvis v City of Phoenix; Maricopa County, Arizona
9. Vanlandingham v Sellen Construction; King County, Washington
10. Quintanilla v City of Seattle; King County, Washington

**Depositions/Arbitrations:**
1. Cheng v Tran, et al.; King County, Washington
2. Allensworth v Ganesha; Clark County, Nevada
3. King v MAC Pizza Co.; Chelan County, Washington
4. Alcala v City of Los Angeles; Los Angeles County, California
5. Harrington v Holland Residential, LLC; Snohomish County, Washington
6. Burnett v MT Department of Highways; Lewis and Clark County, Montana
7. Nelson v Masters; King County, Washington
8. Kwok v AAA NCNU Insurance Exchange; San Francisco, California
9. Vaughn v Northwest Eye Center; Spokane County, Washington
10. Bird v Martin Family Trust, et al.; Whatcom County, Washington
11. Stephens v Jack In The Box; Bannock County, Idaho
12. Woods v Auburn School District; King County, Washington
13. Morgan v Baker Hughes, et al.; US District Court, Wyoming
14. Hurst v Albo; King County, Washington
15. Rose v Herfy's Burgers; King County, Washington
16. Fulbright v Columbia County Transit; Columbia County, Washington
17. Pedersen v Crystal Mountain; King County, Washington

18. Boucher v BNSF; Cascade County, Montana
19. Kim v First Lutheran Church; Los Angeles County, California
20. Glassman v State of Washington (EWU); King County, WA
21. Radischat v Office Depot; King County, Washington (Arbitration)
22. Dimick v Hopkinson; Unita, Wyoming
23. Bongiorno v Allrock; Clark County, Nevada
24. Nunnallee v University of Idaho; Latah County, Idaho
25. Saltzberg v Chuckanut Capital, LLC; King County, Washington
26. Vanlandingham v Sellen Construction, Inc.; King County, Washington
27. Quintanilla v City of Seattle; King County, Washington
28. Glaser (Trees) v Sorenson; King County, Washington
29. Deitz v Providence Health Services-Washington; King County, Washington
30. Raines v Sunwest Enterprises, LLC, et al.; Yakima County, Washington
31. Kaptein v BMC West Corporation; US District Court, Idaho
32. Larson v Cactus Pete's; Twin Falls County, Idaho
33. Ross v Palace Station; Clark County, Nevada
34. Veluz-Abraham v County of Los Angeles; Los Angeles County, California
35. UP v UPRC, et al.; Morehouse Parish, Louisiana
36. Tolentino v Wenatchee Valley Hospital; Chelan County, Washington
37. Morrison v Stone; Teton County, Idaho
38. Roberts v Jackson Hole Mountain Resort; US District Court, Wyoming
39. Frey v Daffodil Bowl; Pierce County, Washington
40. Gagnier v Hilton Garden Hotel; Yakima County, Washington
41. Poteet v Washington Closure Hanford, LLC; Benton County, Washington
42. Smith v Bouwfonds Seasons GP, LLC; Snohomish County, Washington
43. Xu v City of Issaquah; King County, Washington
44. Arnold v City of Shelton; Mason County, Washington
45. Lima v State of Washington; King County, Washington

## 2015
**Trials:**

1. Gebru v Burstein; King County, Washington (State)
2. Gebru v Burstein (Rebuttal); King County, Washington
3. State of Idaho v Rietkerk; Twin Falls County, Idaho
4. Boyd v Isrankura; King County, Washington
5. Pamplin v Safway Services; Clark County, Washington
6. Guernsey v City of Salinas; Monterey County, California
7. Vannatter v Value Village; Spokane County, Washington
8. Broderick v State of California; Mariposa County, California
9. Holihan v Potlatch, et al.; Boise County, Idaho

**Depositions/Arbitrations:**

1. Vannatter v Value Village; Spokane County, Washington
2. Ledford v Value Village; Yakima County, Washington
3. Jarvis v City of Phoenix; Maricopa County, Arizona
4. Rhodes v Veolia Transportation, Inc.; Clark County, Nevada
5. Beck v Wilson; Spokane County, Washington
6. Schibel v STCU; Spokane County, Washington
7. King v Four Seasons Resort; Teton County, Wyoming

6

8.  Williams v GE Medical Systems; King County, Washington
9.  Brewer v City of Kent; King County, Washington
10. Arnett v Seaside Transportation; San Francisco, California
11. Byzewski v Part 212 Apartments; King County, Washington
12. Paulson v Life Care Services; King County, Washington
13. Montgomery v The Cosmopolitan; Clark County, Nevada
14. Hamiel v NET Systems; Kitsap County, Washington
15. Hopkins v Fred Meyer's; Spokane County, Washington
16. Selway v Walsh Construction; Great Falls, Montana
17. Grimes v NW Nitro; Yakima County, Washington
18. Poole v City of Auburn; King County, Washington
19. Moctezuma v Big Lots; Los Angeles County, California
20. Whyte v Whitebird, Inc; Grant County, Washington
21. Holihan v Potlatch, et al.; Boise County, Idaho
22. Drake v Costco; King County, Washington
23. Eirls v Hoopfest; Spokane County, Washington
24. Dingfield v Macy's; Spokane County, Washington
25. Mason v Emerald Downs; King County, Washington
26. Guernsey v City of Salinas; Monterey County, California
27. Holihan v Potlatch, et al. (Part II); Boise County, Idaho
28. Poole v City of Auburn (Part II); King County, Washington
29. Dirkson v Northtown Square, LLC.; Spokane County, Washington
30. Chenoweth v Mercer Island; King County, Washington
31. D'Arcy v Evergreen Hospital; King County, Washington
32. Gotcher v Intercity Contractors; King County, Washington
33. Kaur v All State; King County, Washington
34. Kendall v McDonald's; Jackson County, Missouri
35. Bigknife v Xanterra Parks & Resorts; District of Wyoming
36. Byers v Home Depot; Clark County, Nevada
37. Gray v Coast hotels, et al.; Clark County, Nevada
38. Baker v National Railroad; Western District of Washington, Seattle
39. Crawford v City of Kennewick; Benton County, Washington
40. Forbush v Sagecrest Multifamily POA; Ada County, Washington
41. Dawood v Mercedes Benz; Western District of Washington, Tacoma
42. Giovara v Fashion Mall; Clark County, Nevada
43. Fulton v Fred Meyer; King County, Washington

## 2014
**Trials:**

1.  Brock v Jack in the Box, Inc.; King County, Washington (State)
2.  Kerber v Golden Waite Properties, LLC; Pierce County, Washington
3.  Jones v K-Mart; Natrona County, Wyoming

**Depositions/Arbitrations:**

1.  Levi v Greyhound Bus Lines, Inc.; Seattle, Washington
2.  Roundtree v Boise Baseball Park; Boise, Idaho
3.  Gooler v Sun Dome; Yakima, Washington
4.  Huebner v GNLV, Corp.; Clark County, Nevada
5.  Morgan v City of Ketchum; Blaine County, Idaho

6.  Steffen v Home Depot; Spokane County, Washington
7.  Haney v SMG; King County, Washington
8.  Israel v State of Washington; King County, Washington
9.  Hansen v. Pettit Oil; King County, Washington
10. Jewell v Safeway, et al.; Spokane County, Washington
11. Jordon v Floral Expressions, et al.; Spokane County, Washington
12. Broderick v CAL Trans; Mariposa County, California
13. James v State of Washington; Seattle, Washington
14. McConnell v Burger and Grand; Spokane County, Washington
15. Lopez v Island of Angels Child Care Center; Benton County, Washington
16. Swingholm v Pilot Travel Ctrs.; Cheyenne, Wyoming
17. Pilutik v McDonald's; King County, Washington
18. Campbell v University of Washington; Seattle, Washington
19. Hutchins v Silverwood; Kootenai County, Idaho
20. Gebru v Burstein; King County, Washington
21. Buchanan v Brog; Lincoln County, Wyoming
22. Jones v K-Mart; Natrona County, Wyoming
23. Pamplin v Safway; Clark County, Washington
24. Ferraro v Mac & Jack's Brewery; Spokane County, Washington
25. McElyea v Zapata's, Inc.; Park County, Wyoming
26. Boyd v Isarankura; King County, Washington
27. Haynes v Orting School District; Pierce County, Washington
28. Graziano v Coast Hotels & Casinos; Clark County, Nevada
29. Boyd v Isarankura (Part II); King County, Washington
30. Morales v Restec Contractors, et al.; San Francisco County, California
31. Larsen v City of Seattle; King County, Washington
32. Gebru v Burstein; King County, Washington
33. Modroo v Mountain Hardware; Bonneville County, Idaho
34. Baker v Ada County; Canyon County, Idaho