HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUDITH COLE, et al., | CASE NO. C18-5182RBL |
| Plaintiffs, | ORDER |
| v. | |
| KEYSTONE RV COMPANY, | |
| Defendant. | |

THIS MATTER is before the Court on Plaintiff Cole's Motion to Certify Class [Dkt. # 82], Cole's Amended or supplemental Motion to Certify [Dkt. # 119], and on Defendant Keystone's Motions to Exclude Cole's Experts, Gill [Dkt. # 155] and Walker [Dkt. # 158].

Cole and the other named Plaintiffs, Michael and Johnson, purchased Keystone Recreational Vehicles, and occupied them full time. They claim Keystone did not meaningfully inform them of the risk of serious injury resulting from this ordinary use of Keystone RVs, specifically, the adverse health effects of prolonged occupancy and indoor air quality due to moisture, mold, and formaldehyde. They assert claims under the Washington Consumer Protection Act., arguing they were harmed at the point of purchase by paying more than the RVs

were worth. They seek economic damages, and they seek to certify a class of all such purchasers of Keystone RVs in Washington State since March 2013.

Keystone opposes certification, arguing first that the named plaintiffs (Cole, Michael and Johnson) lack standing because none has alleged an injury in fact caused by their purchase of Keystone RV. It also argues that the plaintiffs cannot meet their Rule 23(a) obligation to demonstrate numerosity, commonality, and typicality. It also argues that Plaintiffs cannot meet their Rule 23(b) obligation to show either that the class issues predominate over individual ones, or that a class action is superior to other available methods for efficiently resolving the controversy.

Keystone also moves the Court to exclude two of Cole's expert witnesses under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 590 (1993). It claims that her "human factors" expert, Joellen Gill, is not qualified and her untested opinions are not relevant or admissible. It argues that Cole's other expert, John Walker (a vehicle appraiser), has supplied an inadmissible Declaration purporting to opine that "all Keystone owners 'have a claim' against Keystone."

Because plaintiffs' standing is the threshold inquiry, the Court's analysis begins there.

**I. STANDING**

Keystone argues that Cole, Michael and Johnson do not have standing to pursue economic loss claims against it. It argues the fact they seek to represent a class and to assert claims on its behalf does not alter the underlying requirement that they each individually have standing. Keystone argues that none of the three named plaintiffs can prove that they actually suffered an injury caused by living in a Keystone RV. None has evidence that mold or formaldehyde caused their injuries, none were in fact exposed to formaldehyde, and they have no

evidence supporting the claim the RVs were improperly designed or constructed. It argues that plaintiffs "failure to warn" CPA claim does not give them standing because it is not an unfair or deceptive act. It relies on its claims (discussed below) that their human factors expert's opinions about the adequacy of its warnings are not admissible, and on its own experts' competing opinion that they were sufficient.

A plaintiff has standing to sue only if they present a legitimate "case or controversy," meaning the issues are "definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). To establish Article III standing, he must show that he (1) suffered an injury in fact that is (2) fairly traceable to the alleged conduct of the defendants, and that is (3) likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. at 560–61. A plaintiff who faces a threat of future injury "has standing to sue if the threatened injury is certainly impending, or there is a substantial risk" that the injury will occur. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Cole purchased her Keystone RV in September 2017. Cole's husband had severe COPD at the time of the purchase; his oxygen mask can be seen in the photograph that is part of her amended complaint. [Dkt. # 5 at 15]. The Coles purchased and moved into their RV and she claims she soon discovered mold in it. By October 2017, Mr. Cole's condition worsened, and, sadly, he passed in November 2017. Cole asserts that his exposure to moisture, mold, mildew and possibly formaldehyde in the RV made his condition worse and was a cause of his death. Nevertheless, she does not assert a claim for such damages.

Michael claims that she suffered allergic reactions after occupying two Keystone Rvs in 2016 and 2017. She claims she suffered respiratory ailments caused by mold or moisture in the

RVs. But she has no evidence of such mold; the tests show lower levels of mold, and elevated levels of pet dander. Johnson claims that his Keystone RV leaked, leading him to have to place a tarp on its roof, which in turn led to him falling off it and injuring himself.

Keystone argues that none of these injuries are reasonably traceable to any mold or moisture exposure caused by living in the Keystone RVs.

Plaintiffs respond that the injuries they suffered (and the damages they seek) relate not to their personal injury claims but to purely economic damages—the difference in value between the RVs as represented and what they would have been worth, if the health hazards had been properly disclosed. Ignoring for the moment the admissibility of Plaintiffs' damages expert's opinions, they have established the required injury in fact to establish standing.

## II. MOTION FOR CLASS CERTIFICATION.

Cole seeks to certify as a class "all persons who have purchased a new or used[1] Keystone RV in Washington in the last four years." [Dkt. # 5] The class seeks economic damages based on the difference in fair market value between the RVs as represented and what they would have been worth, if the health hazards had been properly disclosed.

Under Rule 23(a), members of a class may sue or be sued as representative parties only if:

(1) the class is so **numerous** that joinder of all members is impracticable;

(2) there are questions of law or fact **common** to the class;
(3) the claims or defenses of the representative parties are **typical** of the claims or defenses of the class; and

---

[1] Cole's complaint includes claims based on the purchase of "new and used RVs." Her Motions for Certification refer only to new RVs, actually describes two classes: one consisting of those who wish to rescind their purchases (including out of pocket expenses, less reasonable use), and the other purchasers who wish to keep their RVs, but obtain a 30-50% rebate to compensate them for the diminished value of them.

> (4) the representative parties will fairly and adequately protect the interests of the class.

(Emphasis added). Before certifying a class, the Court must conduct a "rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied. *See General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Additionally, a court may certify a class only if one of the following Rule-23(b) conditions applies:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b) (emphasis added). "The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

Keystone accurately urges the Court that class certification has only gotten more rigorous in the past decade; Rule 23 is not a pleading standard. A plaintiff must "affirmatively show actual compliance" with Rule 23(a)'s "stringent" requirements. Citing *Am. Express Co. v. Italian*

*Colors Rest.*, 133 S.Ct. 2304, 2309 (2013). It argues that plaintiffs cannot meet any of the required 23(a) elements, and neither of the alternate Rule 23(b) elements.

**A.  Numerosity.**

The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no threshold number of class members that automatically satisfies this requirement," but 40 is generally an adequate number. *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1326–27 (W.D. Wash. 2015); *see also Wamboldt v. Safety–Kleen Sys., Inc.*, No. C 07–0884 PJH, 2007 WL 2409200, at *11 (N.D.Cal. Aug. 21, 2007).

Cole's initial motion to certify [Dkt. # 82] was based on the claims of three known class member (the three named plaintiffs), each of whom purchased a Keystone RV and began long term or continuous occupancy of it, and soon suffered health problems they claim were caused by the Keystone RVs. Plaintiffs have since filed the Declarations of three more putative class members [Dkt. #s 115, 116, and 117]. They claim that, with spouses (and with the plaintiff in another, since-dismissed case, *Axon v Keystone RV Company*, Spokane County Superior Court No. 9-02549-32), they have identified 10 class members.

The Plaintiffs' Amended (Supplemental) Motion to Certify adds 20 new declarations which they claim represent an additional 37 plaintiffs, for a total of 47 class members. They claim that every purchaser of a new Keystone RV since March 9, 2013, is a class member, because each was harmed when Keystone failed to make required disclosures at the point of sale. They claim Keystone has sold 13,558 RVs in Washington since 2014. Each purchaser, they claim is a member of the class, and they argue the numerosity requirement is facially met.

Keystone argues that even if plaintiffs seek only economic damages (and not personal injury damages, despite their repeated reliance on medical diagnoses) resulting from the non-

disclosed health risks of prolonged exposure, it does not follow that every purchaser of a new Keystone RV suffered the same sort of damage from that allegedly deficient disclosure: the vast majority of those purchasers did not suffer the same "injury"—using their RVs as full time residences without knowing of the risks—that plaintiffs allege. It argues that unlike plaintiffs (who claim they did not read the user manual outlining some of the risks) some of the purchasers *did* read the manual. Others no longer own their RVs, others had no health problems, and still others may have been orally warned by the dealer. One of the new declarants even saw evidence of water in the vehicle and purchased it anyway.

Keystone also disputes the propriety and efficacy of plaintiffs' newly-submitted declarations. It argues that the witnesses were not properly disclosed and that some are not even in the proposed class.

The differences among the class members' claims and damages and remedies is addressed below. For purposes of this motion, Plaintiffs have satisfied Rule 23(a)'s numerosity requirement.

**B. Commonality.**

To satisfy Rule 23(a)'s "common question of law or fact" requirement, the plaintiffs' claims must "depend upon a common contention" that is "capable of class-wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This means that determining the truth or falsity of the contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. The key question is whether a "class-wide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Id*. The commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). Indeed, it "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir.2012).

However, the commonality requirement is "subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997). The Court will thus consider the principles guiding (a)(2) commonality in the Rule 23(b) predominance analysis, but resolve both requirements in one stroke.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Common questions are defined by the plaintiffs' ability to make a prima facie showing using the same evidence. *Id*. "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id*. (internal quotations omitted); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("[D]ifferences in damage calculations do not defeat class certification."). However, "[i]f the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance." *Vaquero v. Ashley Furniture Indus.*, Inc., 824 F.3d 1150, 1154 (9th Cir. 2016).

When considering whether common issues predominate, the court should begin with "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). In addition, "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions

which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

Cole argues that the commonality bar is a low one, and identifies what it claims are six (sometimes over-lapping) questions common to all members of the class:

1) Did Keystone violate the Consumer Protection Act by failing to disclose to consumers before their purchase, specific health hazards which may result from the ordinary use of its RVs?

2) Did Keystone violate the Consumer Protection Act by failing to disclose to consumers before their purchase, that they could not "occupy" their RV for "prolonged" periods of time?

3) Did Keystone violate the Consumer Protection Act by failing to provide consumers before their purchase, any meaningful information to consumers about the meaning of "prolonged occupancy?"

4) Did Keystone violate the Consumer Protection Act by failing to disclose to consumers before their purchase, that they would be continuously exposed to formaldehyde (a cancer-causing agent) while occupying their RV?

5) Did Keystone violate the Consumer Protection Act by failing to disclose to consumers before their purchase, specific health hazards which may result from the ordinary use of its RVs?

6) Did Keystone violate the Consumer Protection Act by failing to disclose to consumers before their purchase, the connection between chronic water leaks in Keystone RVs, and the resulting growth of mold?

[Dkt. # 82 at 14-15]. Cole relies largely on *In re Whirlpool Front-Loading Washier Prod. Litig.*, 722 F.3d 838 (6th Cir. 2013), *Whirlpool* arose from well-documented mold problems in defectively-designed front-loading washing machines. Cole claims the cases are similar, on this and other class questions.

Keystone argues it is not enough for plaintiffs to present common questions; for class certification purposes the plaintiff must "pose a question that will produce a common answer" as to the plaintiff class members' injuries. "What matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389 (2011) (emphasis in original). It argues that Cole has failed to articulate how the answer(s) to her questions are common to all class members, and emphasizes that that is her burden. It also points out, correctly, that Rule 23(b)(3)'s predominance requirement is far more demanding than Rule 23(a)'s commonality requirement.

Keystone also argues that *Whirlpool* presents an entirely different factual context. Plaintiffs there had an abundance of evidence of complaints to Whirlpool (as many as three a day), leading to the formation of an internal team to address the problem, and internal reports acknowledging its existence. Cole has nothing like that sort of evidence, despite the allegations in her complaint about the frequency and severity of complaints about mold.  It also points out, correctly, that Rule 23(b)(3)'s predominance requirement is far more demanding than Rule 23(a)'s commonality requirement.

Cole's commonality/predominance problem is highlighted by her proposed sub-classes. She describes a "rescission" class, which essentially seeks a refund (less the reasonable value of use), and a "rebate" class, whose members keeps the RV, but get a retroactive 30-50% discount on the purchase price. Leaving aside the fact there are presumably differences in condensation, mold and moisture (and perhaps formaldehyde[2]) problems across Keystone's wide-ranging

---

[2] Keystone argues persuasively that Cole's evidence of formaldehyde problems in its RVs relies almost exclusively on studies from the aftermath Hurricane Katrina (FEMA trailers), years before any member of the putative class purchased a Keystone RV. It claims without serious

model line-up, this is an "election of remedies" division of plaintiff class members, not separate classes of persons suffering two sorts of injuries. The answers to the injury and remedy inquiries are necessarily individualized. What, for example, is a reasonable rent for one who purchased a top-of-the-line Keystone RV in 2014 and used it without incident, and what is fair for the recent buyer of an entry-level model that leaked almost immediately? What about a consumer that purchased a Keystone RV at full price, and then sold it, without a discount for the claimed defects? Some owners may have read, and followed, Keystone's guidance on keeping condensation and mold out of their RVs; others may have not. There may be common questions, but they do not lend themselves to common answers.

This problem is further underscored by the only evidence of any economic injury at all, supplied by plaintiffs' proposed[3] vehicle appraiser expert, John Walker. Walker freely admits that different class members have different injuries, both in type and amount. Though he is not an attorney, Walker repeatedly opines that various subsets of class members "have a claim" or that they "should be entitled to [one remedy or another]." He also opines on what might be the diminished value of an RV for which "prolonged occupancy" is a problem, as opposed to one that can safely be used for such a purpose. He opines he "believes" that an RV with significant mold has no market value at all, but that if only a small amount of mold is present in the RV, a consumer "might" be "willing to buy an RV at a steep discount, say 50%." [Dkt. # 89 at 7]. Even without any mold, he "believes" it would "require a discount of at least 30%"—a figure he would also apply to used RVs, where the "seller discloses the undisclosed health hazards."

---

rebuttal that it now uses only minimal amounts of formaldehyde in its RVs, and there is no evidence of any formaldehyde problems in any of the class representatives' RVs.

[3] Keystone's Motion to Exclude Walker as an expert is discussed below.

Even if this testimony was admissible to demonstrate damage, it also demonstrates that the class members' individual claims do not have common outcomes, or answers. Plaintiffs have not demonstrated that their claims meet Rule 23(a)'s commonality requirement (which they are required to do in any event), or that they meet Rule 23(b)(3)'s requirement that such claims "predominate" (which is one of the ways they can overcome their second hurdle under Rule 23(b)).  All the evidence suggests instead that their claims are individualized.

**C. Typicality.**

"[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon, 150 F.3d at 1020*. This requirement "ensures that 'the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Gold v. Midland Credit Management, Inc.*, 306 F.R.D. 623, 631 (N.D. Cal. 2014) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n. 13 (1982)). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). Courts consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 508.

The typicality and adequacy of representation analyses tend to "merge" in many respects. *Amchem*, 521 U.S. at 626 n. 20. Adequacy concerns whether the representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir.2011) (quoting *Hanlon*, 150 F.3d at 1020).

Cole argues that each class member was injured at the time of sale, and that their subsequent (different) actual experiences are not relevant. Citing *Whirlpool*, supra at 858 (Because all Duet [washing machine] owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have not experience a mold problem are properly included within the certified class.").

Keystone argues that to meet the typicality requirement, Cole and the other named plaintiffs must demonstrate that their own claims are typical of the class members they seek to represent. The three named plaintiffs claim that they did not read the User Manual, and that no Keystone agent told them about the risks associated with prolonged occupancy during their purchase transactions, even though they each informed the salespeople that that is what they intended to do. Each claims that they suffered not only economic damage, but actual physical damage (even death) due to the failure to disclose and subsequent mold or moisture problems.

Plaintiffs' characterization of this injury as "typical" of the rest of the class is demonstrably not accurate. Keystone understandably points to information that is available to consumers generally, including its website and its user manuals, which it accurately claims "openly discuss issues involving water intrusion, condensation, ways to prevent and reduce mold, prolonged occupancy, formaldehyde, and tips to improve indoor air quality."

Plaintiffs have not demonstrated that their claims are typical of the class, such that class treatment is appropriate under Rule 23(a).

**D.  Rule 23(b) – Superiority.**

While this could end the inquiry, the court will address Rule 23(b)'s alternate requirement. The superiority requirement focuses on whether a class action is the best method of

dispute resolution in the particular case, and "necessarily involves a comparative evaluation of alternative mechanisms." *Hanlon*, 150 F.3d at 1023. Courts should consider the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Cole argues that class wide litigation of the named plaintiffs' claims and the classes claims will reduce litigation costs and promote efficiency. Citing *Whirlpool*, *Hanlon*, and *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1234 (9th Cir. 1996). She reiterates her claim that her claims are the same as those of her proposed class: she claims Keystone knowingly failed to disclose to its purchasers the "defects" in its RVs.

Keystone responds that Cole has not articulated how any of Rule 23(b)(3)'s four factors favor a class action. Specifically, Cole has not identified how these various claims can or should be tried. Nor has she articulated a damage theory that is consistent with her liability theory; again, the inquiries about disclosures are individualized. The Court is not persuaded that class resolution of the three named plaintiffs' claims is superior to litigation of those claims individually.

The Motion for Class Certification is DENIED. Plaintiff Cole's, Michael's, and Johnson's individual claims shall proceed to trial, but not as a class action.

# III. MOTION TO EXCLUDE EXPERTS

Under Rule 702, a witness may provide expert testimony if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Civ. P. 702. "District judges play an active and important role as gatekeepers examining the full picture of the experts' methodology and preventing shoddy expert testimony and junk science from reaching the jury." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (*Daubert I*), the Supreme Court interpreted the requirements of Rule 702. The Court first determined that an expert's opinion must be reliable—i.e., an expert may only testify about knowledge "derived from the scientific method" and must avoid "subjective belief or unsupported speculation." 509 U.S. 579, 590 (1993). Later, in *Kumho Tire Co. v. Carmichael*, the Court extended *Daubert I*'s reliability requirement to encompass "technical" and "other specialized knowledge" as well, although the indicia for reliability may differ between scientific and other types of expertise. *See* 526 U.S. 137, 141, 148 (1999); Fed. R. Civ. P. 702(a). *Kumho* also reiterated that the Rule 702 analysis is "flexible" and allows courts "broad latitude" to determine the appropriate basis for assessing reliability, which in some cases may be the expert's "personal knowledge or experience." *Id*. at 141, 150. The goal is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.

In addition to requiring reliability, *Daubert I* also held that an expert's opinion must "assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592. In other words, the proffered testimony is only admissible if it "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc. (Daubert II)*, 43 F.3d 1311, 1317 (9th Cir. 1995). For example, an expert's vague assertions about a "statistically significant relationship between [a drug] and birth defects" do not help a trier of fact who must determine whether there is a causal relationship on a more-likely-than-not basis. *Id.* at 1321.

### A. Human Factors Expert Gill

Keystone asks the Court to exclude the testimony of Cole's human factors expert, Joellen Gill. Gill purports to opine that Keystone failed to warn its purchasers about the dangers of using their RVs for prolonged occupancy, including the risks from moisture, mold and formaldehyde. Keystone argues that Gill is not qualified, and that her opinions are untested, are not generally accepted, and ultimately irrelevant because she has not proposed alternate warnings she claims would suffice.

Keystone's complaints about Gill's qualifications are fair and she will be subject to cross examination. But the fact that a handful of Courts have excluded her is not dispositive. She has testified in what appear to be hundreds of cases. That she does not do research, write, or test, or even have any special knowledge beyond reading other people's work, go to the weight of her testimony.

Keystone's complaints about reliability of Gill's opinions are related and more persuasive. She has done no research into what warnings might be effective, such as a survey of consumers. Nor have her general assumptions about the efficacy of written warnings been tested by others; she cites no scholarly work on the subject; even her derivative claims have not been subject to peer review. Her specific critiques in this case—the warnings are too benign and

vague, and therefore are misleading—are similarly based primarily on her own subjective assumptions or beliefs. It points to a similar proposed opinion about personal water craft warnings that were rejected in a Utah federal court. *Wells v. Kawasaki*, 2:16-cv-1086-DN, Dkt. No. 306 (D. Utah May 30, 2018).

Keystone claims that Gill's opinions are not relevant in the absence of a proposed better, more effective warning. She claims the warnings were not strong enough but also contends that most consumers won't read them anyway, which suggests that no warning would be effective. She does not propose a better way of warning of the dangers of prolonged occupancy.

It is a close call. Gill's opinions are marginally relevant, and will be subject to presumably robust cross examination on these and other points. But her opinions about the efficacy of Keystone's warnings about mold and moisture generally are admissible, barely. Keystone's Motion to exclude them is DENIED.

Gill's final opinion, that Keystone failed to properly warn about the risks of formaldehyde exposure, are a bridge too far. She does not know or opine that formaldehyde is even in the RVs, or at what levels, and as discussed above, there is no evidence of any formaldehyde exposure in this case. Gill's opinions on this topic are EXCLUDED.

**B. Vehicle Appraiser Walker**

Keystone asks the Court to exclude the testimony of Cole's vehicle appraiser, Walker. Walker's opinions are discussed above.

Walker's opinions have no demonstrated basis; they are little more than *ipse dixit*. His 30% and 50% "discounts" are seemingly pulled from thin air. He is admittedly unqualified to opine about whether the plaintiffs "have claims" or "should be able to" rescind their purchases or obtain a retroactive discount; those are legal questions for the Court.

Walker is not qualified, and his opinions are neither reliable nor relevant. The Motion to Exclude Walker's opinions [Dkt. # 158] is GRANTED.

IT IS SO ORDERED.

Dated this 14th day of July, 2020.

Ronald B. Leighton
United States District Judge

ORDER - 18