UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUDITH COLE, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>KEYSTONE RV COMPANY,<br><br>　　　　Defendant. | C18-5182 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a Motion for Summary Judgment brought by Defendant Keystone RV Company ("Keystone"), docket no. 201.  Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

Keystone is a company that sells Recreational Vehicles ("RVs"). See Owner's Manual at 1, Ex. A to Corr Decl. (docket no. 202).  Through its Owner's Manual, which Keystone also maintains on its public website, Keystone provides information regarding the susceptibility of RVs to condensation because of their small size and enclosed space, especially when used for an extended period beyond recreational use.  Id. at 1 & 9.  For

ORDER - 1

1 example, within the Limited Warranty chapter of the Owner's Manual, Keystone
2 provides the following caution[1]:

> **⚠ CAUTION**
>
> *Your recreational vehicle was designed primarily for recreational use and short-term occupancy. Prolonged Occupancy can lead to premature component wear/failure and create conditions, which if not managed properly, may be hazardous to your health and/or cause significant damage to your recreational vehicle. These types of "Damage" are NOT covered under this Limited Warranty. Please also refer to the Owner's Manual, Chapter 3, Prolonged Occupancy and Indoor Air Quality for more information on proper management during Prolonged Occupancy.*

Id. at 9.  Chapter 2 further states in bold that the Limited Warranty does not apply to **"[t]railers used for business, rental, commercial, residential, or disaster relief purposes, or any purposes other than recreational travel and family camping**." Id. at 8.

The same caution box is repeated at the start of Chapter 3, which is titled "Effects of Prolonged Occupancy and Indoor Air Quality." Id. at 12.  The Owner's Manual then gives further details on indoor air quality in RVs:

> Unlike a home which can be thousands of square feet in size, your RV is only a few hundred square feet.  The relatively small volume and tight compact construction of modern recreational vehicles means that the normal living activities of even a few occupants (or animals) will lead to rapid moisture saturation of the air contained in the RV.  Estimates indicate that a family of four can vaporize up to three gallons of water daily through breathing, cooking, bathing and washing.
>
> Unless the water vapor is carried outside by ventilation or condensed by a dehumidifier, it will condense on the inside [of] the unit.  It may condense out of sight inside cabinets, closets, etc. where air temperature within may be

---

[1] The Owner's Manual explains that the yellow caution sign "indicates a potentially hazardous situation that, if not avoided, may result in minor or moderate injury."  Owner's Manual at 2.

ORDER - 2

> slightly different.  This can not only cause damage to your RV but also your personal belongings.  Appearance of these conditions can be misconstrued as a water leak.
>
> Good indoor air quality is essential for long term enjoyment of your Keystone recreational vehicle.  To maintain good air quality you need to be attentive to proper ventilation of your recreational vehicle, keeping the RV clean, and avoiding unnecessary air pollutants.  Common indoor air pollution sources include molds, pollen, dander from pet fur, secondhand smoke, carbon monoxide from burning propane and other fuels (and charcoal), and household cleaners.  Inadequate ventilation can increase indoor pollutant levels by not bringing enough outdoor air to dilute emissions from indoor sources and by not carrying indoor air pollutants outside.  High temperatures and humidity levels can also increase concentrations of some air pollutants.  Those people most at risk for poor indoor air quality include:  people with asthma, people with allergies, people who have chronic lung diseases such as bronchitis and emphysema, people with pre-existing heart disease, children, and the elderly.

Id.  Chapter 3 then provides recommendations from the Centers for Disease Control ("CDC") and Environmental Protection Agency ("EPA") on how to improve indoor air quality and tips on how to avoid condensation.  Id. at 13–14.  The following section is titled "Where There Is Moisture, There May Be Mold," and gives information on mold and advice on how to control mold growth in RVs.  Id. at 14.

Chapter 3 next gives information on the role of formaldehyde in the manufacture of its RVs.  Id. at 15.  The section "Formaldehyde & Recreational Vehicles" gives the following guidance:

> Formaldehyde is a naturally occurring substance.  Formaldehyde may be released from smoking, cooking, use of soaps and detergents such as carpet shampoos, cosmetics, and many other household products.  It is also a by-product of combustion and certain other natural processes.  Thus it may be present in concentrations both indoors and outdoors.  Formaldehyde is also an industrial chemical used in the manufacture of some of the components used in the construction of recreational vehicles and is also contained in some holding tank chemicals.  Some people are very sensitive to formaldehyde

ORDER - 3

> while others may not have any reaction to the same levels of formaldehyde. Formaldehyde is a colorless, pungent-smelling gas that can cause watery eyes, burning sensations in the eyes and throat, nausea, and difficulty breathing.
>
> As recommended by the CDC and the EPA, improving the air quality can be accomplished by actions such as opening windows, opening roof vents, operating fans and vents, running the air conditioner, or some combination thereof.  In particular, to the extent that formaldehyde is contained in some of the components used to construct your RV or holding tank chemicals, you should properly ventilate your RV to maintain good indoor air quality in the RV.  Recreational vehicles are much smaller than homes and therefore the exchange of air inside a recreational vehicle is significantly less than a home.  Therefore, ventilation should occur frequently before, during and after use, and at times when the temperatures and humidity are elevated.  Decreasing the flow of air by sealing the recreational vehicle may increase the presence and/or concentration of indoor air pollutants, such as mold, household chemicals and formaldehyde.

Id.  The section additionally gives a notice from the California Air Resource Board ("CARB") and lists several websites that customers may go to for more information.  Id.  Keystone provides further information on the use of formaldehyde in its RVs on its website through a Frequently Asked Questions (FAQ) page.  Ex. A to Holmes Decl. (docket no. 203 at 5–14).  The FAQ page answers questions like "What is formaldehyde?", "What is it used for?", "Why is it in RVs?", and "Is it harmful?/How does it affect people?"  Id. (docket no. 203 at 7).  The FAQ page also contains a section titled "A Review of the Various Formaldehyde Emissions Standards" and the website provides a digital copy of Keystone's Pocket Guide on formaldehyde that contains tips on how to minimize risk.  Id. (docket no. 203 at 9–10); Ex. B to Holmes Decl. (docket no. 203 at 20).

ORDER - 4

Plaintiffs Judith Cole, Louise Michael, and David Johnson (collectively Plaintiffs) purchased their Keystone RVs in 2016, 2015, and 2014, respectively.  Am. Compl. (docket no. 5 at ¶¶ 3.28, 3.39–.40, & 3.51).  Cole has a history of respiratory problems, Michael has a significant history of allergies, and Johnson is disabled.  Id. at ¶¶ 3.31, 3.39, & 3.51.  Each planned to live in their RVs for prolonged periods of time, and they all allege that they told their respective dealers of this intent.  Id. at ¶¶ 3.28, 3.39, & 3.51.  They also allege that the dealers involved did not inform them of the health risks associated with prolonged occupancy of RVs.  Id. at ¶¶ 3.28, 3.39, & 3.51.  Plaintiffs allege that mold developed in each of their RVs.  Id. at ¶¶ 3.34, 3.46, & 3.57.

In March 2018, Plaintiffs filed a class-action lawsuit against Keystone, alleging violations of the Washington Auto Dealer Practices Act ("ADPA") and the Washington Consumer Protection Act ("CPA"), and for breach of warranty under the Uniform Commercial Code ("UCC").  See Compl. (docket no. 1).  As stated in their Amended Complaint, Plaintiffs sought to represent a class of similarly-situated Keystone purchasers damaged by Keystone's alleged failure "to disclose any of several different risks of serious injury resulting from the ordinary use of Keystone RVs, which have been known to Keystone for years."  Am. Compl. (docket no. 5 at ¶ 1.1).

In August 2018, upon Keystone's motion to dismiss, Plaintiffs' ADPA was dismissed as time-barred and their UCC claim was dismissed with the opportunity to amend, which they did not do.  Order (docket no. 24).  Plaintiffs' Motion for class certification was denied in July 2020.  Order (docket no. 173).  Keystone now moves for summary judgment on Plaintiffs' only remaining claim under the CPA.

ORDER - 5

**Discussion**

**1. Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. Id. at 255, 257. When the record, taken as a whole, could not, however, lead a rational trier of fact to find for the non-moving party on matters as to which such party will bear the burden of proof at trial, summary judgment is warranted. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also Celotex, 477 U.S. at 322.

**2. Consumer Protection Act**

The CPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (citing Hangman Ridge Stables, Inc. v.

1 Safeco Title Ins. Co., 105 Wn.2d 778, 784, 719 P.2d 531 (1986)).  Keystone asserts that

2 the Plaintiffs' CPA claims fail because they cannot establish the first or fifth elements.

### a. Unfair or Deceptive Act or Practice

4 As to the first factor, whether a certain act or practice is "unfair or deceptive" is a

5 question of law.  Panag, 166 Wn.2d at 47.  The Washington Supreme Court has held "that

6 a claim under the Washington CPA may be predicated upon a per se violation of statute,

7 an act or practice that has the capacity to deceive substantial portions of the public, or an

8 unfair or deceptive act or practice not regulated by statute but in violation of public

9 interest."  Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013).

### i. Act or Practice that has the Capacity to Deceive

11 Plaintiffs assert that Keystone violated the CPA by concealing essential facts that

12 it knew were material to a consumer's decision to buy an RV, namely alleged "significant

13 health hazards known to Keystone, significant restrictions on the use of its RVs, and

14 unconscionable warranty exclusions."  Resp. at 7–8 (docket no. 208).

15 Under the capacity-to-deceive test, a plaintiff must only show that the alleged act

16 had the capacity to deceive a substantial portion of the public, not that the act in question

17 was intended to deceive.  Hangman Ridge, 105 Wn.2d at 785.  The "knowing failure to

18 reveal something of material importance is 'deceptive' within the CPA."  Indoor

19 Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 75, 170 P.3d 10

20 (2007).  "[Washington] cases establish a general duty on the part of a seller to disclose

21 facts material to a transaction when the facts are known to the seller but not easily

22 discoverable by the buyer."  Griffith v. Centex Real Estate Corp., 93 Wn. App. 202, 214,

969 P.2d 486 (1998) (citing Testo v. Russ Dunmire Oldsmobile, Inc., 16 Wn. App. 39, 51, 554 P.2d 349 (1976)).

Any contention that Keystone failed to disclose facts about mold, formaldehyde, prolonged occupancy, or its limited warranty is clearly contradicted by the Owner's Manual that contains information about each topic and is publicly available online. Sellers have a duty to disclose only facts not easily discoverable by the buyer. Here, because the facts about mold, formaldehyde, prolonged occupancy, and Keystone's limited warranty[2] were posted on a public website, they were easily discoverable had Plaintiffs chosen to look for them.[3]  See Steele v. Extendicare Health Servs., Inc., 607

---

[2] In their Response, Plaintiffs argue that Keystone's warranty exclusions are ineffective. Plaintiffs' claim for breach of warranty under the UCC, however, was dismissed with leave to amend, which Plaintiffs chose not to do. Plaintiffs' only remaining claim in this case is their CPA claim. Thus, the Court considers Keystone's limited warranty only in the context of whether it was not disclosed or was deceptive under the CPA. As explained, the warranty was easily discoverable through Keystone's Owner's Manual, which it posts on its public website. Additionally, the limited warranty was not deceptive as the Owner's Manual clearly states that because the RVs were designed primarily for recreational use and short-term occupancy, the limited warranty does not cover "[t]railers used for business, rental, commercial, residential, or disaster relief purposes, or any purposes other than recreational travel and family camping." See Owner's Manual at 8–9.

[3] Plaintiffs state that Keystone's "caution" and information on health hazards and prolonged occupancy are "buried" within the Owner's Manual. Resp. (docket no. 208 at 5 & 8). To the extent Plaintiffs suggest that the information is not readily available, their claim lacks merit. Keystone's Owner's Manual contains a table of contents that lists bolded title chapters, including "**Chapter 2: Limited One Year Warranty**" and "**Chapter 3: Effects of Prolonged Occupancy and Indoor Air Quality**." Owner's Manual at 6 (docket no. 202). Beneath the chapter titles are the titles of subsections discussed and the page on which to find them. For example, Chapter 2 has a subsection titled "Warranty Exclusions" that begins on page 8 of the Owner's Manual. Id. The table of contents also lists subsections under Chapter 3, namely "Effects of Prolonged Occupancy," "Improving Indoor Air Quality," "Tips to Avoiding Condensation," "Where There Is Moisture, There May Be Mold," "Formaldehyde & Recreational Vehicles," and "Web Sites of Interest." Id. This table of contents makes the Owner's Manual easily navigable for consumers looking for information. Furthermore, regarding Keystone's caution, the caution appears multiple times in the Owner's Manual, with the first appearance on page 9, and contains a bright yellow heading. For these reasons, the Court rejects any contention that information in the Owner's Manual on mold, formaldehyde, prolonged occupancy, or Keystone's limited warranty is not readily available because it is "buried" within the manual.

ORDER - 8

F. Supp. 2d 1226, 1233–34 (W.D. Wash. Mar. 24, 2009) (concluding that a nursing home did not have a duty to disclose a history of its deficiencies where a third party had posted that information on a publicly available website); AVH & BJ Holdings 2, LLC v. LaClare Invs., LLC, No. 51001-4-II, 7 Wn. App. 2d 1066, 2019 WL 1049521, at *13 (Mar. 5, 2019) (unpublished) (affirming dismissal of CPA claim where, although the party did not disclose relevant facts, those facts were "clear from readily available information," including being posted on websites).

Although Plaintiffs recognize that Keystone's Owner's Manual is available on its website, they assert that the Owner's Manual is nevertheless deceptive because it "contains only *vague* references to formaldehyde, mold, mildew and 'prolonged occupancy.'" Resp. at 8 (emphasis in original). This assertion lacks merit. Regarding formaldehyde, the Owner's Manual explains what it is, how it is released, where it might be located within an RV, and the reactions it might cause in some people. Keystone's website also lists several other online resources to which a consumer can go for additional information about formaldehyde. To provide even further information, the FAQ page answers questions like "What is formaldehyde?", "What is it used for?", "Why is it in RVs?", and "Is it harmful?/How does it affect people?", contains a section titled "A Review of the Various Formaldehyde Emissions Standards," and provides a digital copy of Keystone's Pocket Guide on formaldehyde that contains tips on how to minimize risk.

Turning to mold and prolonged occupancy, which Plaintiffs acknowledge are closely related, the Owner's Manual prefaces its first discussion of prolonged occupancy

ORDER - 9

with a bright yellow caution sign.  Keystone informs consumers that, although the RVs are not designed for prolonged occupancy, any potentially unhealthy, premature component wear/failure caused by such use can be managed with proper care.  The Owner's Manual repeats this warning in Chapter 3, which discusses the effects of prolonged occupancy on indoor air quality.  Chapter 3 explains that, because of the relatively small size of RVs, normal living activities lead to rapid moisture saturation of the air in the RV.  To prevent the water vapor from condensing inside the RV and potentially damaging the RV and personal belongings, the Owner's Manual explains how to maintain good air quality in the RV, including with recommendations from the CDC and EPA.  Chapter 3 further discloses that indoor air pollution may be caused by mold, and has a section titled "Where There Is Moisture, There May Be Mold," which gives information on mold and advice on how to control mold growth in RVs.  Finally, the Owner's Manual identifies the groups of people most at risk for poor indoor air quality, including people with allergies and people with chronic lung conditions.  Contrary to Plaintiffs' contention, these extended discussions on formaldehyde, mold, and prolonged occupancy are not merely "vague" references.

Still, Plaintiffs assert that Keystone's disclosures were deceptive under the CPA because they were not meaningful or effective.  Resp. at 3, 4, & 5.  The additional warnings that Plaintiffs assert Keystone should have made, however, were either easily discoverable (i.e., common varieties of mold are known to be toxic to humans, the health hazard is greater the longer one is exposed to a toxic substance) or are not supported by the record (i.e., Keystone RVs have "chronic problems with mold and mildew," Keystone

ORDER - 10

RVs have a "substantial presence of formaldehyde," consumers "could not or should not occupy their RVs for 'prolonged' periods"). At its root, Plaintiffs' argument is that Keystone did not disclose the information to them in their preferred method, which does not itself constitute a deceptive act under the CPA. Under Washington law, because Keystone made the information publicly available online, making it easily discoverable, Keystone did not have a duty to disclose the information through other methods as well. See Steele, 607 F. Supp. 2d at 1233–34; AVH & BJ Holdings 2, LLC, 2019 WL 1049521, at *13.

Under the CPA, "[d]eception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." Panag, 166 Wn.2d at 50 (quoting Sw. Sunsites, Inc. v. FTC, 785 F.2d 1431, 1435 (9th Cir. 1986)). Given the extensive, publicly available information and additional resources regarding formaldehyde, mold, prolonged occupancy that Keystone provides online through its Owner's Manual and FAQs, no rational trier of fact could find that Keystone's representations on those subjects were deceptive. Since private CPA plaintiffs must establish all five elements, the Court's conclusion that Plaintiffs do not meet the first element is fatal to their claim and the Court need not discuss the other elements. See Hangman Ridge, 105 Wn.2d at 793. Plaintiffs' CPA claim predicated on an act or practice alleged to have the capacity to deceive substantial portions of the public is DISMISSED with prejudice.

//

//

ORDER - 11

### ii. Per Se Violation

Plaintiffs argue that they satisfy the first element under the "stale predicate" doctrine because they have demonstrated a per se violation of the CPA by showing a violation of the ADPA.

Any violation of the ADPA is deemed to affect the public interest and constitutes a violation of the CPA. RCW 46.70.310. Under the ADPA, it is unlawful to "cause or permit to be advertised, printed, displayed, published, distributed, broadcasted, televised, or disseminated in any manner whatsoever, any statement or representation with regard to the sale, lease, or financing of a vehicle which is false, deceptive, or misleading." RCW 46.70.180(1). Plaintiffs assert that Keystone violated this provision by not disclosing: (1) any of the serious health hazards which can result from the ordinary use of an RV, (2) any restrictions on the prolonged occupancy of an RV, and (3) any of the warranty exclusions for living in an RV. Resp. (docket no. 208 at 10). But Plaintiffs make only conclusory statements that Keystone violated the ADPA, which is insufficient to survive summary judgment. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). Even so, the Court has already determined that Keystone's representations on mold, prolonged occupancy, formaldehyde, and its limited warranty were not deceptive. See Walker, 155 Wn. App. at 207–08 & 212–215 (considering deceptive actions under the CPA and ADPA interchangeably). Again, Plaintiffs' failure to meet this first element is fatal to their claim and the Court need not address the other elements. See Hangman Ridge, 105 Wn.2d at 793. Accordingly, as to Plaintiffs' per se

claim under the CPA, Keystone is entitled to summary judgment and that claim is DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Keystone's Motion for Summary Judgment, docket no. 201, is GRANTED and Plaintiffs' CPA claim is DISMISSED with prejudice;

(2) The pending motion to Exclude Plaintiffs' Expert Witness, docket no. 204, is STRICKEN as moot;

(3) The Clerk is directed to enter judgment consistent with this Order and to send a copy of the Judgment and this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 22nd day of July, 2021.

Thomas S. Zilly
United States District Judge

ORDER - 13